JOSHUA M. SEARS *vs.* ALPHEUS HARDY & others.

Suffolk.    March 22, 23. — 29, 1876.    June 20. — September 8, 1876.
DEVENS & LORD, JJ., absent.

ALPHEUS HARDY & another, trustees, *vs.* JOSHUA M. SEARS & others.

June 20. — September 8, 1876.    DEVENS & LORD, JJ., absent.

On a bill in equity against a trustee under a will to establish a resulting trust in the bulk of the estate, the court will order persons, who may claim the same as *cestuis que trust* under the will, to be made parties defendant.

A testator, by his will, after various bequests to his relatives and to charitable purposes, gave the "rest, residue and remainder" of his "estate" to trustees, in trust to hold, invest and manage the same. Then followed a gift to his only son and heir of $30,000, to be paid him at the age of twenty-one years. The will con-

cluded with the following clauses: "All such parts of the income of my estate which may be necessary for the support and education of my son I direct to be used for that purpose, and when he shall be twenty-one years old I direct that four thousand dollars be paid to him annually, when he shall be twenty-five years old six thousand per year, and ten thousand dollars per year when he shall be thirty years old. And in case of the death of my son before he arrives to the age of twenty-one years, then I direct that ten thousand dollars be paid to said town of Y. for the purpose of a library and six thousand dollars for free lectures in said town. And the residue and remainder of said estate I direct to be paid and divided, one third thereof to my brother C., one third to my brother W., and one third to the children of my brother T." Specific bequests to the town and to persons named in the last clause had been made in the first part of the will. After the payment of debts and legacies, the estate of the testator amounted to nearly a million and a half of dollars ; and, when the son was twenty-one years of age, the estate had increased to over four millions of dollars. *Held,* that the bequest to the brothers under the last clause of the will was contingent on the son's dying before arriving at the age of twenty-one years. *Held, also,* that the provision for the support and education of the son ceased on his arriving at the age of twenty-one years. *Held, also,* that the annuities to be paid to the son were by way of substitution, and not cumulative. *Held, also,* that on the son's reaching the age of twenty-one years, he was entitled, by way of resulting trust, to so much of the residue of the estate as was not needed to produce the net income of ten thousand dollars.

THE FIRST CASE was a bill in equity by the heir at law of Joshua Sears against the trustees under his will, to enforce a resulting trust in the residue of his estate. The bill alleged the following facts :

That Joshua Sears died on February 7, 1857, leaving the plaintiff his only child and sole heir, then a minor, and a will, dated February 5, 1857, and duly admitted to probate, as follows :

"Know all men by these presents, that I Joshua Sears, of Yarmouth in the Commonwealth of Massachusetts, merchant, do make and publish this my last will and testament as follows, to wit: I give to my brother Charles Sears of said Yarmouth twenty-five thousand dollars. I give to my brother Willard Sears of New Bedford in said Commonwealth twenty-five thousand dollars. I give, devise and bequeath to my nieces Hannah Sears and Catherine Sears, daughters of my brother Charles Sears, the house in said Yarmouth now occupied by said Charles Sears, the stable and Register office with the land under and around them, being the same premises which said Charles Sears conveyed to me. It being understood that my brother Charles

shall with his wife occupy the same during their lives and the life of the survivor of them, they paying the taxes and keeping the premises in repair. I give to my niece Mary Jane Myrick two thousand dollars in full for services rendered and which she shall render to my son Joshua Montgomery Sears until he shall be five years old. I give to my nephew Alexander Pomeroy Sears ten thousand dollars. I give to my nephew Cyrus A. Sears ten thousand dollars, to be paid to him five thousand dollars when he shall be twenty-five years old, and five thousand dollars when he shall be thirty-five years old, the interest on said sums until payment of the principal is to be paid by my executors and trustees to said Cyrus or his guardian. I give to my nephew Isaac Myrick fifteen hundred dollars to set him up in business. I give to the other children of Isaac and Lucy Myrick one thousand dollars to each. I give to my nieces, the children of my sister Sally Crocker, fifteen hundred dollars to each. I give to the two children of my sister Hannah Hamblin one thousand dollars to each. I order and direct my executors and trustees to pay to my sister Hannah Hamblin the income of five thousand dollars during her life. I give to my executors and trustees five thousand dollars, in trust to pay the income to my niece Olivia R. Sears during her life, and after her decease said five thousand dollars to go to her heirs. I give to the town of Yarmouth, my native town, fifteen thousand dollars, for the purpose of founding a school on the North side of Yarmouth for teaching navigation and kindred sciences.

" I give to the Boston Seamans Friend Society three thousand dollars.

" I nominate and appoint Alpheus Hardy of Dorchester in said Commonwealth, merchant, to be the guardian of my son Joshua Montgomery Sears.

" I nominate and appoint Alpheus Hardy of Dorchester, Horatio Harris of Roxbury, merchants, and Hugh Montgomery of Boston, counsellor at law, all of said Commonwealth, to be the executors of and the trustees under this my will, and it is my will and I request that my said executors and trustees shall not be required to give any other or greater bonds to the judge of probate than said judge shall under all the circumstances of the case in his discretion think best.

"All the rest, residue and remainder of my estate I give to said Alpheus Hardy, Horatio Harris and Hugh Montgomery, their heirs and assigns, as joint tenants, in trust to hold, invest, manage and take care of the same according to their best knowledge and discretion, and I wish them to invest one half part of my estate in favorable purchases of real productive estate, stores to be preferred, looking well to the value and titles thereof.

" And I wish them to invest one half part of said estate in bottom mortgages on estates which shall be considered of twice the value of the money loaned thereon, the titles of such estates to be well examined.

" I give to my son Joshua M Sears the sum of thirty thousand dollars to be paid to him at the age of twenty-one years.

" All such parts of the income of my estate which may be necessary for the support and education of my son I order to be used for that purpose, and, when he shall be twenty-one years old, I direct that four thousand dollars be paid to him annually, when he shall be twenty-five years old six thousand per year, and ten thousand dollars per year when he shall be thirty years old.

" And in case of the death of my son before he arrives to the age of twenty-one years, then I direct that ten thousand dollars be paid to the said town of Yarmouth for the purpose of a library and six thousand dollars for free lectures in said town.* And the residue and remainder of said estate I direct to be paid and divided, one third thereof to my brother Charles, one third to my brother Willard, and one third to the children of my brother Thomas W. Sears."

That Alexander Pomeroy Sears, Cyrus A. Sears and Olivia R. Sears, mentioned in the will, are the children of the testator's deceased brother Thomas W. Sears.

That the persons named as executors and trustees were duly appointed, and had, as executors, fulfilled their trust, and by their final account, which had been allowed by the Probate

---

* It appeared by a fac-simile of the will, which was before the court, that each paragraph began at the very beginning of a line; that the word " town " came to the end of the last line on the third page, and that the word " And " began the first line of the fourth page. At the argument, it was in dispute whether the word " And " began a new paragraph or not.

Court, there was in their hands, on the settlement of their account as executors, nearly a million and a half of dollars, with which they charged themselves as trustees, and the same constituted the rest, residue and remainder of the estate of said Joshua Sears, after payment of his debts, the legacies given by the will, and the charges of administration; of which amount, about three fourths were invested in real estate, and the other fourth in personal property.

That the plaintiff arrived at the age of twenty-one years on December 25, 1875; and that the defendants, until the plaintiff arrived at the age of twenty-one years, appropriated such parts of the income of the trust estate in their hands as trustees under said will, as was necessary for his support and education.

That the defendants have invested, from time to time, all the income of said trust estate in their hands, after paying the charges and expenses of the trust, and appropriating so much of the same as was necessary for the support and education of the plaintiff; and that the value of the trust estate, now in the hands of the defendants as trustees under said will, exceeds four millions of dollars, invested in real estate and personal property, and the annual income thereof exceeds three hundred thousand dollars.

That said Joshua Sears, by his said will, provided, in case of the death of the plaintiff before he arrived at the age of twenty-one years, that ten thousand dollars be paid to the town of Yarmouth for a public library, and six thousand dollars for lectures in said town, and the residue and remainder of said estate he directed to be paid and divided, one third to his brother Charles Sears, one third to his brother Willard Sears, and one third to the children of his brother Thomas W. Sears.

That in the event of the plaintiff arriving at the age of twenty-one years, said Joshua Sears, in and by his said will, made no disposition whatever of any part of the aforesaid rest and residue and remainder of his estate so given, as hereinbefore set forth, to the defendants as trustees, or of the surplus income thereof, beyond the sum of thirty thousand dollars to be paid to the plaintiff when he should arrive at the age of twenty-one years, and the payment of four thousand dollars annually to the plaintiff until he should be twenty-five years old, and the sum

of six thousand dollars annually until he should be thirty years old, and the sum of ten thousand dollars when he should be thirty years old.

That the plaintiff, having arrived at the age of twenty-one years, and being the sole heir of the said Joshua Sears, as such heir is entitled to so much of the trust estate in the hands of the defendants, and of the income thereof, as is not required for the payment of said thirty thousand dollars, and the payment of said sums of four thousand dollars, six thousand dollars, and ten thousand dollars.

The bill then alleged payment by the trustees to the plaintiff of the sum of $30,000, and a demand and refusal to pay so much of the rest as was not required to pay the annuities in question.

The prayer of the bill was that the defendants be ordered to convey to the plaintiff so much of the estate in their hands as trustees, and the surplus income thereof, as was not required for the payment of the annuities; and for further relief.

The answer admitted the allegations of the bill, except as to the construction of the will; suggested that, by the last clause of the will, the residue of the estate, after providing for the annuities, should be paid to the brothers of the testator and the children of a deceased brother; and submitted the questions arising on the will to the judgment of the court.

The case was reserved by *Gray*, C. J., on the bill and answer, for the consideration of the full court. Horatio Harris afterwards died, and his death was suggested of record, and the suit proceeded against the surviving trustees.

*H. C. Hutchins & A. S. Wheeler*, for the plaintiff.

*C. T. Russell*, (*T. H. Russell* with him,) for the defendants.

GRAY, C. J. The question which lies at the threshold of the investigation of this case, and the only one which the court has yet considered, is whether all the parties, who are interested in the subject matter of the suit and may be affected by the decree, are before the court, so that complete justice may be done and future litigation avoided.

Who shall be made parties to a suit in equity cannot always be determined by definite rules, but rests to some degree in the discretion of the court. Generally speaking, however, to a suit against trustees to enforce the execution of a trust, *cestuis que*

*trust*, claiming present interests directly opposed to those of the plaintiff, should be made parties, in order that they may have the opportunity themselves to defend their rights, and not be obliged to rely upon the defence made by the trustees, or to resort to a subsequent suit against the trustees or the plaintiff, or to take the risk of being bound by a decree rendered in their absence. Story Eq. Pl. §§ 72, 76c, 180, 192, 193, 201, 207, 208. *Hopkins* v. *Hopkins*, West Ch. 606, 619; *S. C.* 1 Atk. 581, 590. *Holland* v. *Baker*, 3 Hare, 68, 72. *Coles* v. *Forrest*, 10 Beav. 552, 557. *Caldwell* v. *Taggart*, 4 Pet. 190, 203. *Clark* v. *Reyburn*, 8 Wall. 318. *Michigan State Bank* v. *Gardner*, 3 Gray, 305, 308.

In a common suit for a debt or a legacy, the executors indeed sufficiently represent the estate. Story Eq. Pl. § 140, note. And if the present suit were brought merely to compel the application of part of the income of the trust fund to the support and education of the plaintiff, it might not be necessary to join as parties those who might claim to be residuary legatees. *Dandridge* v. *Washington*, 2 Pet. 370. But the scope of this bill is much wider, and affects the bulk of the estate.

Both parties admit that the legal title in the residue of the testator's property, after the payment of certain legacies, is vested in the trustees. Both parties recognize, as a possible construction of the will, that, the plaintiff having arrived at the age of twenty-one, no disposition is made of the principal, or of any part of the income, (except the very small proportion of the latter required for the payment of an annuity to him of fixed amount,) unless such disposition is made by the final clause of the will, directing "the residue and remainder of said estate to be paid and divided" to and among the testator's brothers Charles and Willard and the children of his brother Thomas. It is suggested, though not confidently urged, by the trustees, that this clause may give all the principal and income, not otherwise disposed of, to those relations of the testator. On the other hand, it is contended for the plaintiff that this clause is to be taken as limited, by the clause next preceding, to the case of his dying under twenty-one, and has therefore no application, and that the principal and income not disposed of must therefore go, by way of resulting trust, to him as the heir at law.

In that aspect of the case, the question will be whether, by the true construction of the will, the beneficial interest in so much of the property, as is not required for the security and payment of the annuity to the plaintiff, belongs to the plaintiff as the testator's son and heir at law, or to the testator's brothers and nephews as residuary devisees.

Upon this question, justice requires that the latter should have an opportunity to be heard. Their claim, being in direct opposition to the right asserted by the plaintiff, could not be tried by joining them as co-plaintiffs with him in this bill. *Cholmondeley* v. *Clinton*, 2 J. & W. 1, 135–137; 4 Bligh, 1, 81, 123; Turn. & Russ. 107, 116. *Fulham* v. *McCarthy*, 1 H. L. Cas. 703. *Bartlett* v. *Parks*, 1 Cush. 82, 86. But we have grave doubts whether they are not necessary parties defendant to this suit, and whether, if they are not necessary parties, a decree in favor of the plaintiff would be conclusive upon them so as to prevent their hereafter bringing suit against him or against the trustees; and we are satisfied that it is at least within the discretion of the court to allow them to be made parties, and to decline to enter upon the consideration of the merits of the plaintiff's claim until they have had an opportunity to be heard, either by summoning them in as defendants in this case, or by the trustees filing a bill for instructions in the execution of their trust, to which all possible claimants of the residue of the estate may be made parties. See *Armstrong* v. *Lear*, 8 Pet. 52; *Gordon* v. *Green*, 113 Mass. 259. *Ordered accordingly.*

The bill was then amended by making Willard Sears, the only surviving brother of the testator, and the descendants of the other brothers, parties defendant. They appeared and filed an answer admitting the allegations of the bill, but contending that by the true construction of the will they were entitled to so much of the residue of the estate as was not needed to pay the annuities. The answer also alleged that after the will was first drawn, and before it was signed, the clause giving thirty thousand dollars, on the son arriving at the age of twenty-one years, was interlined; and that, at the same time, the annuities to the son, which were originally written "two thousand," "four thousand" and "eight thousand," respectively, were changed to the sums as they now appear.

THE SECOND CASE was a bill in equity filed April 5, 1876, by the surviving trustees under the will of Joshua Sears, against Joshua M. Sears, Willard Sears, and the descendants of Charles Sears and of Thomas W. Sears, setting forth the facts before stated in the first case, and praying for the instructions of the court upon the following points:

"First. Whether they may or ought to continue to use all such parts of the income of said trust fund as may be necessary for the support and education, or both, of the said Joshua Montgomery Sears during his natural life, or for what period of time and to what extent they may so use the same; and whether such support or education, or both, ought to be commensurate and in accordance with the large amount of property so held in trust; and whether the amount so to be used is in the discretion of the trustees.

"Second. Whether the annuities of four, six and ten thousand dollars are cumulative upon or substitutionary one of the other.

"Third. Whether the said Charles Sears or Willard Sears or the children of Thomas W. Sears, or their legal representatives, have any claim to or any right, title or interest in the said trust fund and property, or any portion thereof, now in the hands of the trustees as aforesaid, or in or to the income thereof, or to any portion of the income thereof.

"Fourth. Whether or not the trustees ought to pay over or convey any portion of the principal fund so held in trust by them to said Joshua Montgomery Sears, and if they so ought to pay over or convey, then what proportion thereof.

"Fifth. Whether or not the trustees ought to pay over or convey to said Joshua Montgomery Sears any income which has heretofore accumulated in their hands, or that may hereafter be received and remain from year to year, from said trust property, after paying said annuities, and for the support and education of said Joshua Montgomery Sears, and all charges and expenses of the trust; and if they ought to pay to him said accumulated and surplus income, or any portion thereof, what proportion of said accumulated and surplus income, or of either, ought they so to pay him, and how often ought the same to be so paid over to him.

" Sixth. Whether or not the plaintiffs, as surviving joint tenants of said rest and residue, are not now seised and entitled to the same, and all income thereof, or the reversion, legal or equitable, thereof, absolutely and in their own right, subject only to the charges thereon for the support and education of said Joshua Montgomery Sears, and the aforesaid annuities payable to him as aforesaid."

Both cases were reserved by *Gray*, C. J., on the bill and answers, for the consideration of the full court.

*H. C. Hutchins & A. S. Wheeler*, for Joshua M. Sears.

*C. T. Russell*, for the trustees.

*B. F. Thomas*, (*G. A. King* with him,) for Willard Sears and the descendants of the other brothers of the testator. 1. In ascertaining the intent of the testator, we start with the presumption of law that a man making a will does not mean to die intestate as to the bulk of his property. This presumption is greatly strengthened when it appears that careful provision is made for the heir. It gains additional force when it appears that in any contingency the will covers the entire estate. It may also be fairly presumed that the testator, having an only child and heir at law, his disposing mind and memory would be turned to the child, and that he would be especially careful to provide for him. It does not follow that he would desire to give a son the entire estate or the principal part of it; as to the wisdom or policy of such disposition, he might use his own judgment and discretion, and it is enough if it appears he has used them.

The will shows that the subject matter of providing for his son was several times under the testator's consideration. He gives a legacy to a niece for the care of the son till he is five years old. He appoints an esteemed friend his guardian. Having given certain legacies to other relatives and to charities, and created trusts for still other relatives and appointed trustees, he provides that, of the estate not theretofore disposed of, a trust fund should be created, and directs the mode of its investment. That this trust fund was not intended to include the trusts created for Cyrus A. Sears, Hannah Hamblin and Olivia R. Sears is plain from two considerations : 1. If included in this trust the income might be used for the support and education of the son;

and thus the trusts defeated.   2. And further, and what is quite conclusive on this point, upon the death of the son, if even immediately after that of the testator, they would pass to the residuary devisees, and so the trusts be defeated.

The trust fund being created, the testator directs such parts of the income as may be necessary for the support and education of his son to be used for that purpose, making the third time he has had the provisions for his son directly under consideration. These provisions cover the period of his minority.   What shall be done for him at and after his majority is the next subject of the testator's consideration, and he provides that when he is twenty-one he shall have $2000 paid him annually; when he is twenty-five, $4000; when he is thirty, $8000, equal to four, eight and sixteen thousand now.   These provisions cover the whole life of the son, and are seemingly final.   He makes two other gifts to Yarmouth, if his son should die before twenty-one. He then makes a residuary clause covering the residue and remainder of the estate which has been the subject of disposition by the will, including, as is submitted, as well the remainder of the trusts created for his sister and nephew as that for the son; and the will is complete for the time being.   The testator's attention is, however, again drawn to the son, and the provision to be made for him is for the sixth time the subject of consideration, and upon this revision and reconsideration he determines to add to the former provision a gift of $30,000 absolutely when ..e is twenty-one years of age, and to increase the annuities from two to four thousand, from four to six and from eight to ten, — expressing, as clearly as would be possible by any oral declaration, that he did not intend his son should have any other or further sum from his estate than, after consideration and reconsideration, he had provided in his will.

The claim of the son is that the testator, whom the law presumes to have understood the legal effect of what he was doing, at the time he was settling and revising the annuities to be paid to his son after he was twenty-one, understood that at that time he would receive an income of from two hundred to three hundred thousand dollars a year, and that, while the testator only after a second consideration concluded to give him any sum as principal and limited that to $30,000, he understood that at the

same moment he would have $3,000,000 or $4,000,000. Such a claim is without reason. Nor is it more rational to suppose that the disposition of the residue of his estate escaped the testator's attention. It is conceded that its disposition in one contingency was the subject of his consideration, to wit, the death of his son before twenty-one, and this could not have failed to suggest the other contingency. It is plain that the other contingency of the son and heir at law living to be twenty-one had been fully considered and provided for. All the gifts to him rest upon that contingency. It also is plain that the residuary clause is broad enough in its terms to give the residue to the brothers and the children of the deceased brother, unless it is linked with and made to depend upon the clause of the will immediately preceding.

The question is not to be settled by assuming that the residuary clause is but an appendage to a small gift to the town of Yarmouth; it must be settled upon such construction as shall, if possible, make the whole instrument fulfil its purpose as a will and be consistent with itself. It is said the rest and residue of said estate is the rest and residue after the new gifts to Yarmouth are deducted, and as they were not to take effect unless the son died before twenty-one, the residuary clause was not to take effect except in the same contingency. Upon the just construction of the whole will, the terms "said estate" in the residuary clause have their usual scope and meaning, and that is the entire estate which has been the subject of disposition by all the previous clauses of the will, and not merely the next preceding clause. "The residue and remainder of said estate," therefore, refer to and include the remainder of the trust to Cyrus A. Sears, if dying before thirty-five, and the principal of the trust fund for Hannah Hamblin; otherwise these are not disposed of, it being plain, for the reasons before stated, that they could not make part of the trust fund whose income was to be used for the son. The words therefore are made to do the usual office of a residuary clause and gather in any remainders or lapsed legacies from the whole estate, and the "indissoluble link," which is said to bind it to the preceding clause, is severed.

The suggestion of two residuary clauses creates confusion only, by adhering to the letter and forgetting the spirit and

meaning. The devise to the trustees immediately following their appointment is not in substance and effect a residuary clause. What is meant by the term " remainder of my estate " is that which remains after the preceding legacies are paid and trusts established.

Not much importance can be attached to the order in which the provisions follow each other in the latter part of the will. There is no natural order. For example, the gift of $30,000 to the son after he is twenty-one goes before that making provision for support and education before he is twenty-one. The usual place for a residuary clause is at the end of the will. It connects itself with the previous clauses, not by numerical order, but by subject matter. If it were inserted in the middle of the will it would not necessarily vary the effect. The residuary clause in this will has its usual place and in a distinct paragraph. The whole confusion as to the construction is created, not removed, by assuming to connect the residuary clause with the clause containing the new gift to Yarmouth and making it dependent upon it. Assuming that the clauses are connected and dependent, the word " then " is applied to both gifts, the existence of such connection being the exact question at issue, and opposed to the general tenor and scope of the instrument. The connection of the new gifts to Yarmouth with the preceding clause making provision for his son is more obvious and direct. I give so much income to my son at twenty-one years; if he dies before he is twenty-one, so much more to Yarmouth.

The intent to make his brothers and the children of a brother residuary legatees is not negatived by the fact of having made to them specific legacies. Nothing is more common than to make specific gifts to legatees, and then make the same persons residuary legatees. The objection applies with equal if not greater force to the son. *Mutato nomine*, it may be said that the testator would not have limited with so much care the income to be received by his son, so much at twenty-one, so much at twenty-five, so much at thirty, when he knew that at twenty-one he would have the principal of millions, and an income of hundreds of thousands; and still more, that he should leave matters in this form when brought to consider so many times what should be done for him.

The only plausible ground on which the argument for the son can be put is that he forgot or overlooked the bulk of his property, and after consideration and reconsideration went to a point and there stopped; an assumption which would seem to stultify testator and scrivener. It is plain that the testator has not given to his son anything except provision for his support and education, the $30,000 and the annuities. What he would give him he had considered and determined. There was no reason in the mind of the testator to make the residuary clause to his next of kin contingent upon his son's dying before twenty-one, as he did not intend he should have the residue of his property whether he survived or not. The idea that the testator reasoned that if his son died before twenty-one he would not leave issue, and therefore the collateral heirs would take, is mere conjecture. If such were his purpose and intent, there was no occasion for a will to give them effect, for the son, dying before twenty-one, could make no will, and the collateral heirs would take under the statute of distributions. The argument against this residuary devise having the most moral force is the improbability that a father would leave to an only son so small a portion of his estate. This consideration cannot have weight in direct opposition to known facts offered in proof. If it were a question of the probate of the will, the comparatively small amount given to his son might have some possible, though very slight, weight upon the question of the testator's competency. But the will having been admitted to probate, the only question is, What does it say? It is too late to inquire what it should have said; and little or no weight can be given to suggestions, however ingenious, of what was the course of reasoning in the mind of the testator: if you get into this vein, it is just as reasonable to say he meant to give his son enough for an honorable support and not enough to spoil him.

2. If any part of the estate goes to the son by implication or resulting trust, it is the entire income until he is twenty-one; so much as is necessary for his support and education is to be used and the rest kept by the trustees until he is twenty-one; when twenty-one, he takes the balance of income, $30,000 of the principal, and so much more as is necessary to produce the annuities, and the balance of the principal goes to the residuary

legatees. It will be observed that the testator has, in no case, used the word "estate" as including income, but has discriminated between them. The first use to be noted in the will is the phrase "all the rest, residue and remainder of my estate;" this does not include income, for the fund is to be made up before income accrues. The second use is: "And I wish them to invest one half of my estate in purchases of real, productive estate." Nothing is said as to investment of income as is common, not to say universal, as to such trusts. In the next paragraph he distinguishes between estate and income. "All such parts of the income of my estate which may be necessary for the support and education of my son I order to be used for that purpose;" not income of income, but income of "my estate." He gives to the son $30,000 to be paid when he is twenty-one years of age, but it is not directed to be taken from income previously accrued. When the son is twenty-one years of age he is to receive $4000 annually, not said to be income of income, but in legal effect requiring that such part of the principal should be retained by trustees as to produce such annuity. "And the residue and remainder of said estate I direct to be paid" (applicable to that invested in mortgages) "and divided" (applicable to real estate) "one third to my brother Charles," &c. Nothing is said as to the income. In all the clauses the word "estate" means the same thing, that is, principal.

There would seem to be better ground for saying the son takes the whole income to the time he is twenty-one, by implication or by resulting trust as not otherwise disposed of, than that he takes the principal in either way, for the principal, the "estate" is in terms given to the residuary legatees, the same "estate," with the deductions for annuities and minus the $30,000, spoken of in all the prior clauses.

MORTON, J. These two cases present the same questions and may be considered together.

The first question is as to the construction of the last paragraph of the will of Joshua Sears, which is as follows: "And in case of the death of my son before he arrives at the age of twenty-one years, then I direct that ten thousand dollars be paid to said town of Yarmouth for the purpose of a library and six thousand dollars for free lectures in said town. And the residue

and remainder of said estate I direct to be paid and divided, one third thereof to my brother Charles, one third to my brother Willard, and one third to the children of my brother Thomas W. Sears." It is contended that the latter clause of this paragraph is to be construed independently of the first part, and as a general residuary clause, intended by the testator to dispose of all his estate, not otherwise disposed of by his will, absolutely and without any contingency. But we are unable to give it this construction. Upon reading the whole will, the natural impression produced upon the mind is that the testator intended, by the clause in question, to make provision only for the contingency of his son's death before he was twenty-one years old. In the former parts of his will he makes bequests to several legatees, including the relatives named in the last clause, and then, in the language commonly used in general residuary clauses, devises and bequeaths " all the rest, residue and remainder of my estate to said Alpheus Hardy, Horatio Harris and Hugh Montgomery, their heirs and assigns " in trust to support and educate his son until he reaches the age of twenty-one years, to pay him thirty thousand dollars when he reaches that age, and afterwards to pay him an annuity during his life. In these provisions the testator had in view the probable contingency of his son's reaching the age of twenty-one years, and he disposes, so far as the legal title is concerned, of all his estate. His mind then turns to the possible contingency of the death of his son before he is twenty-one years old, and he gives sixteen thousand dollars to the town of Yarmouth, and the residue of his estate to his brothers and nephews, who became in that contingency his nearest relatives. Such seems to be the intention as gathered from the whole scope of the will, and the language used, in its natural construction, expresses that intention. It is too clear to admit of any question that the gift, in the clause under consideration, of sixteen thousand dollars to the town of Yarmouth was only to take effect in case of the death of the son before he arrived at the age of twenty-one years. The gift over of the residue is connected with this by the copulative " and," indicating that it was a part of the same scheme of disposition and intended to be dependent upon the same contingency. We cannot give it the construction contended for without wrenching it from its posi-

tion and connection in the will. The testator had already given bequests of specific sums to the collateral relatives named in this clause, and we can see no indications in the will of an intention to give them in addition the principal part of his estate to the exclusion of his son and his son's descendants. We are of opinion, therefore, that the gift over of the residue to the testator's brothers Charles and Willard and the children of Thomas W., was intended to take effect only in case his son should die before he arrived at the age of twenty-one years, and, as that contingency has not happened, this clause of the will is inoperative, and the collateral relatives named therein take nothing under it.

The will devises all the residue of the testator's estate to the trustees upon the trusts that they shall pay his son thirty thousand dollars when he arrives at the age of twenty-one years, which sum has been paid, and upon the further trusts that "all such parts of the income of my estate which may be necessary for the support and education of my son I direct to be used for that purpose, and when he shall be twenty-one years old I direct that four thousand dollars be paid to him annually, when he shall be twenty-five years old six thousand dollars per year, and ten thousand dollars per year when he shall be thirty years old," and the next question presented is as to the construction of this clause. We have no doubt that the provision for the support and education of his son was intended by the testator to be limited to the minority of the son. No time is fixed in terms during which the support and education are to be continued as a trust; but the will, in the same sentence, provides that an annuity shall be paid to the son "when he shall be twenty-one years old," which was clearly intended for his support. A specific annual provision being made to commence at the majority of the son, and to continue during his life, the implication is strong that the testator intended that the previous provision for support and education should cease when he arrived at the age of twenty-one years, the period at which the support and education of a man usually devolve upon himself and cease to be in the nature of a trust. It seems to us also clear that the successive bequests of four thousand, six thousand and ten thousand dollars were intended to be by way of substitution and not cumulative. This is the natural meaning of the language, and

there is nothing in this clause or in the other parts of the will to show an intention that the annuity of six thousand dollars should be in addition to the four thousand dollars, or that the annuity of ten thousand dollars should be in addition to the six thousand dollars.

Under the construction, which we have put upon this will, the result is that the trustees hold all the residue of the testator's estate, which, by their skilful management, has come to be very large, upon the sole trust to pay to the son an annuity which at no time can exceed ten thousand dollars. The will contains no express disposition of the rest of the income during the son's life nor of the principal after his death in the contingency which' has happened, and no provisions from which any such disposition can be implied. In other words, the son having arrived at twenty-one years of age, most of the income of the trust fund and the whole of the principal is undisposed of by the will.

The rule is well settled that if a will fails to dispose of the whole of the testator's property, real or personal, the whole of the undisposed of interest, whether legal or equitable, devolves to the person on whom the law, in the absence of any disposition, casts that species of property. 1 Jarman on Wills, 502. The trustees took no beneficial interest in the residue devised to them. They took the legal estate, and it was necessary that they should hold it until the son became of age, because in the event of his dying before arriving at the age of twenty-one years, the trust fund was to be divided between the town of Yarmouth and the collateral relatives of the testator, under the last clause of the will. But the son having arrived at the age of twenty-one years, the whole beneficial interest in the estate not disposed of by the will devolved to him by way of resulting trust. *Easterbrooks* v. *Tillinghast*, 5 Gray, 17. Thus he alone is beneficially interested in the whole of the principal and income of the residue of his father's estate now held by the trustees, and the only remaining question is whether the trustees shall continue to hold the whole estate, paying him the whole income, or shall transfer to him the balance of the estate beyond what is sufficient to support the only trust declared by the will. It is conceded by all parties that in order to carry out the plain intention of the testator to secure to the son an honorable sup-

port during his life, not exposed to the risks of his improvidence or misfortunes, the trustees should retain in their hands enough of the estate to produce beyond question the annuity provided for in the will. We can see no good reason why the trustees should retain the whole of this large estate when the only purpose for which it was conveyed to them, in the contingency which has happened, is to support a trust to pay an annuity which can never exceed ten thousand dollars. If the annuity was payable to a stranger, the hardship of depriving the son of the enjoyment of the estate, which is his by the rules of law, would perhaps be more apparent, but the principle is the same. He ought to have the control and enjoyment of the property in which he alone is beneficially interested, unless it will contravene some provisions of the will. But if the trustees retain enough of the property to support the annuity, it will carry out the intentions of the testator so far as they are expressed or can be implied from the will.

If, as we have supposed, this annuity was payable to a stranger during his life, and he had died, there is no doubt that there would be a resulting trust in favor of the son, and that he would be entitled to the trust fund discharged of the trust. *Easterbrooks* v. *Tillinghast*, 5 Gray, 17. 4 Kent Com. 307. 2 Story Eq. Jur. § 1200. This is the rule in all cases where the trusts, upon which an estate is devised, fail or are accomplished, and do not exhaust the whole property. The remaining property goes by way of resulting trust, as undisposed of property, to the person to whom the testator's property not disposed of by the will goes by the rules of law. The same reason applies when the property devised is more than is needed to support the trust. The support of the trust being the sole purpose for which the devise is made, if there is a surplus beyond what is needed for that purpose, it is property not disposed of by the will, and descends to the heir at law or distributee, discharged of all trusts, without in any way defeating the intention of the testator. So far as he disposes of his property, his disposition and intention are carried into effect; so far as he fails to dispose of it, it is distributed by the rules of law. As we can see in this will no indication of any intention, in the contingency which has occurred, to dispose of any of the residue of the property

devised to the trustees except the annuity given to the son during his life, it follows that the disposition made by the testator will be carried into effect, and his intentions, so far as he has manifested them, regarded, if a sum is set aside and retained in trust by the trustees which shall in any event be sufficient to produce the largest annuity provided for. If the income of this fund should from year to year exceed the annuity payable, the excess would go annually to the son, who is alone beneficially interested in the estate.

The result of the whole case therefore is that the trustees are to retain sufficient of the property in their hands to produce a net income of ten thousand dollars, and the balance of the property is to be transferred to Joshua M. Sears. The terms and details of the decree will be settled before a single justice.

*Decree accordingly.*