PETER SHILLINGLAW et al., Appellants, v. P. O. PETERSON et al., Appellees.

WILLS: Rights of Devisees—Partition by Remaindermen Prior to
1  Execution of Trust. Remaindermen who, under a will, are entitled to possession of real property only *after* the execution of

a clearly defined trust, may not have partition of the property, or any part thereof, prior to the full execution of said trust, on the plea *that the testator set aside more property than was necessary for the purposes of said trust, and that the court should revise the amount and immediately divide the balance among said remaindermen.* So held where testator devised all his property, which was quite extensive, in trust for the life support of two nephews.

TRUSTS:   Management of Trust—Death of Trustee—Effect.   The death of a trustee prior to the execution of the trust does not terminate the trust, when no special trust or confidence was reposed by the truster in the deceased trustee.

2, 6

PARTITION:   Actions for Partition—Right to Possession as Affecting Right.   He only may maintain partition who is entitled to the *immediate* possession of his or her share of the property. So held where there was an attempt to partition prior to the full execution of a preceding trust.

3

CONVERSION:   Equitable Conversion—Wills.   A will which devises real estate to a trustee, and directs the trustee to execute a named trust and *then* to sell the property and to divide the proceeds among certain remaindermen, works an equitable conversion of the realty into personalty, thereby depriving the remainderman of any legal or equitable interest in the land itself, and, needless to say, of the right to partition the land.

4

PARTITION:   Proceedings and Relief—Incumbrances.   A definite devise of all of testator's property to a trustee, with equally definite direction to the trustee to use the income for the life support of two named beneficiaries and then to *sell* the property and divide it among certain named persons, creates something more than an *"incumbrance,"* within the meaning of Sec. 4249, Code, 1897, which provides that, if any question of "incumbrances" arises in an action for partition, the court may direct issue to be made for the settlement of the same.

5

TRUSTS:   Management of Trust—Death of Trustee—Effect.
2, 6

*Appeal from Hamilton District Court.*—H. E. FRY and E. M. McCALL, Judges.

MAY 20, 1918.

REHEARING DENIED SEPTEMBER 20, 1918.

ACTION in partition. Opinion states the facts. Decree dismissing plaintiffs' petition. Plaintiffs appeal.—*Affirmed.*

*Wesley Martin,* for appellants.

*O. J. Henderson,* for appellees.

GAYNOR, J.—This action is brought by certain heirs of one Andrew Shillinglaw, against certain other heirs and certain devisees named in the will of Andrew Shillinglaw,

1. WILLS: rights of devisees: partition by remaindermen prior to execution of trust.

for the partition of certain real estate owned by Andrew Shillinglaw at the time of his death. The prayer of the petition is that judgment be entered confirming the shares of the parties plaintiff and defendant in the real estate, and that the land be partitioned among them. The alternative prayer is that, if the land cannot be equitably divided, it be sold, and the proceeds divided among them according to their respective shares. The petition, in substance, alleges that Andrew Shillinglaw died on the 3rd day of July, 1907, leaving a will in the words following:

"I, Andrew Shillinglaw, of the township of Lyon in the county of Hamilton and state of Iowa, of the age of 59 years and being of sound mind, do make, publish and declare this my last will and testament, in manner following, that is to say: I give, devise, and bequeath all my property, both real and personal, after my just debts and funeral expenses shall have been paid, in trust, to M. H. Brinton, of Ellsworth, Hamilton County, Iowa, to be held and managed by the said M. H. Brinton for the support and keeping of Joseph Shillinglaw and William Shillinglaw, my nephews, during their lifetime. After the death of both the above named, Joseph Shillinglaw and William Shillinglaw, I direct said trustee, M. H. Brinton, to sell and convey all

my property and distribute the proceeds as follows: First to Jennie Shillinglaw-Clauson, my niece, the sum of $500 over and above her share as a legal heir. The balance is to be divided among my legal heirs, except Allen Shillinglaw, a nephew, who, after having paid for his labor, is to have only $100."

This will was duly admitted to probate on the 18th day of December, 1908.

In June, 1912, M. H. Brinton, named as trustee in said will, died, without having made any disposition of the real estate mentioned in the will. After the death of Brinton, the defendant P. O. Peterson was appointed by the district court of Hamilton County as trustee of said will, and has taken no steps to convert the real estate.

Andrew Shillinglaw, at the time of his death, was a bachelor, and left no children or descendants of children surviving him. His father and mother died long prior to his death. The plaintiffs and defendants aforesaid included all the heirs of said Andrew Shillinglaw and all persons having any right, title, or interest in the property. Joseph Shillinglaw and William Shillinglaw, named in the will, are made defendants because of their interest under the will, and P. O. Peterson, because of his relationship to the estate as trustee.

It is alleged and claimed that the interests of Joseph Shillinglaw and William Shillinglaw can be protected by setting off a certain portion of the purchase price of the real estate, sufficient to maintain them as the will provides.

P. O. Peterson, trustee, and Joseph and William Shillinglaw, mentioned in the will, appeared and filed demurrer to the plaintiffs' petition, basing the demurrer on the grounds:

1. That the facts stated do not entitle the plaintiffs to the relief demanded.

2. That plaintiffs are not entitled to relief, until the termination of the life estate vested in Joseph and William.

3. That plaintiffs are not entitled to the possession of the property described in the petition until after the death of Joseph and William, and are, therefore, not entitled to the partition during the life of Joseph and William.

4. That the plaintiffs are not the owners of any share or shares in the real estate, but are only entitled to a division of the proceeds upon sale made, after the death of Joseph and William.

5. That Peterson, as substituted trustee, has the right of control of said property during the lifetime of Joseph and William, and also the right to sell the property after 'their death, and this right and duty in the premises cannot be defeated by an action of partition.

6. That to partition would defeat the manifest purpose and intent of the testator.

This demurrer was sustained. Thereupon, plaintiffs filed an amendment to their petition, in which they alleged that a very small portion of the income from the land in question is needed for the support and keeping of Joseph and William; that the land involved consists of 320 acres, and is worth $200 an acre, unencumbered; that one fourth of the purchase price of said land, if sold, would be sufficient for the support and keeping of Joseph and William; that the trustee, Peterson, has in his hands a large accumulation from the income of the lands, for which there is no present necessity, in so far as the keeping of Joseph and William is concerned; that Peterson, the trustee, is badly managing the estate; that Joseph and William are ablebodied, and capable of earning a large part of their support; that a good portion of the accumulated income from said land that went into the hands of Brinton during his administration has not been accounted for, and Peterson

has not required an accounting or the payment of the same
to him as trustee; that waste is being committed by Peterson; that, with the exception of Peterson and Joseph and
William, all plaintiffs and defendants herein are the heirs
at law of Andrew Shillinglaw, and are ready, willing, and
anxious to sell the lands, and have the court set aside such
portion of the purchase price as will yield an income sufficient for the support and keeping of Joseph and William
during their lives.

To the petition, as amended, a demurrer, substantially
the same as that interposed to the original petition, was
submitted and sustained.    Plaintiffs appeal.

The situation presents itself thus:  The parties plaintiff and defendant in this action are the sole heirs at law
of the testator, Andrew.    Assuming that the heirs, plaintiffs and defendants, are agreed upon this action, and are
seeking this partition, the situation would be no different
than it would be were all the heirs at law of Andrew plaintiffs in the suit, and were seeking the relief prayed for
herein.    The object and purpose of the proceeding is to partition among these heirs the property mentioned in the will
of Andrew, and bequeathed by him in express terms to a
trustee, in trust, to be held and managed for the support and
keeping of Joseph and William during their lifetime.    One
theory of the plaintiffs', as evidenced by their amendment,
is that the testator, in making disposition of his property,
placed more property in the hands of the trustee than, in
the judgment of these heirs, is sufficient for the support and
keeping of Joseph and William during their lives.    An appeal is made to what is denominated the "conscience of the
chancellor," and the thought seems to be that the court
ought to interfere in behalf of these heirs because it is inequitable, as against them, to allow the trustee to hold, for
the sole benefit of Joseph and William, property in excess of

what their needs may be during their lives; that the court
of equity ought to intervene and say:

"The will gives all the property of the testator to a
trustee, to be held and managed for the support and keep-
ing of Joseph and William during their lives; yet the extent
of the property is such that, in the judgment of the chan-
cellor, the devise ought not to be carried out as made; that
a portion of the property devised to the trustee for the
keeping and support of Joseph and William ought to be
taken away and divided among these heirs, leaving in the
hands of the trustee only so much of the proceeds of the
property devised as, in the judgment of the chancellor,
would be sufficient to support and keep William and Joseph
during their lives."

This is the theory of the amendment.

We dispose of this first, before going to the legal right
of these plaintiffs to partition, independent of any equi-
table considerations, such as are indicated above. Without
elaboration, we have to say that a statement of this propo-
sition is its best answer. The property belonged to An-
drew at the time this will was made, and at the time of
his death. He had a right to make such disposition of it as
he saw fit. Whatever rights the parties acquired under the
will must be measured by the will itself. It is not for the
court to set up its judgment against the judgment of the
testator in the matter of equities, if any equities there are
to be considered. The testator said:

"I give, devise, and bequeath all my property, both real
and personal, in trust to be held and managed by my trus-
tee for the support and keeping of Joseph and William dur-
ing their lifetime."

He left no discretion in the trustee, but gave specific
and definite directions as to what the trustee should do
upon the death of Joseph and William. He directed the
trustee to sell and convey the property and to distribute the

proceeds, directed just how it should be distributed, giving
to some heirs more than an heir's aliquot part and to other
heirs less; but gave specific direction as to how this division
should be made. When the trustee named
in the will died, and a new trustee was ap-
pointed to carry out the provisions of the
will, he became vested with all the power
possessed by the trustee named, because in the will there was
no special trust or confidence imposed in the person named
as trustee, touching the disposition of the property. The
new trustee acts under the will, and his powers and their
limitations are found in the will, and, for all intents and
purposes, he is charged with the duty of executing the
provisions of the will as written. If the trustee is not do-
ing this, the remedy is not found in partition, but by an ac-
tion to remove him, commenced by someone who is inter-
ested in the estate. There is no ambiguity in this will; no
uncertainty as to what disposition the testator desired to
make of his entire property. There was a trustee named;
*cestui que trusts* provided for; a clear direction as to what
disposition should be made of the property upon the expi-
ration of the trust.

2. TRUSTS: man-
agement of
trust: death
of trustee:
effect.

We are cited to *Filkins v. Severn,* 127 Iowa 738, as sus-
taining the contention of plaintiffs that the property in-
volved in this suit ought to be partitioned and divided
among the heirs, leaving only sufficient in the hands of the
trustee as may be found by the chancellor necessary to
carry out the purposes of the trust. In that case, the court
said:

"We are absolutely without any indication as to the
intention of the testator with reference to the distribution
of the trust estate. Even where a beneficiary is named.
if the trust estate far exceeds in value the amount necessary
to carry out the provisions of the trust, and there is no di-
rection as to distribution on expiration of the trust, it is

held that the heirs are entitled to an immediate distribution of all property disposed of in trust beyond the amount necessary to provide for the purposes specified. *Sears v. Hardy,* 120 Mass. 524."

In the Massachusetts case, the heir was the sole beneficiary in the trust. It was held that this property far exceeded in value the purposes for which the trust was created; that enough should be set aside to preserve the trust and its beneficial purposes; and that the balance should go to the beneficiary,—he being also heir,—relieved of the trust character. In *Filkins v. Severn,* supra, it was held that the attempt to create a trust was void for uncertainty.

In the *Sears* case, after making certain bequests, the will devised all the residue to the trustees, with directions to pay to the son $30,000 when he arrived at the age of 21 (this was paid); to use all the income from the trust estate necessary for the support and education of the son; to pay him $4,000 annually upon his reaching the age of 21, $6,000 per year after he arrived at the age of 25, and $10,000 per year after he reached 30. It was apparent, therefore, that no disposition was made of the remainder of the trust estate, if any remained after the payment of these sums. At the time this suit was brought, all that was needed to carry out the trust was a sum sufficient to yield $10,000 a year. So the court said, in effect:

"Preserve the trust. Preserve sufficient to yield $10,000 a year. That is all the trust requires. There is no provision made for the disposition of the balance. There is a large balance. The plaintiff is the heir. It may be turned over to him; otherwise, the trustees hold all the residue for the sole purpose to pay to the son an annuity which cannot exceed $10,000. The will makes no disposition of the rest."

Thus it appears that this case was decided under the rule, which is well settled, that, if the will fails to dispose

of all the testator's property, real or personal, the whole of the undisposed-of property, whether legal or equitable, goes to the persons on whom the law, in the absence of any disposition by will, casts the property. The final holding of the court was that the plaintiff alone is beneficially interested in the residue then held by the trustees, and that the trustees, as such, should hold sufficient of the property to carry out the purposes of the trust. The balance of the property, not necessary to the carrying out of the will, was undisposed of, and the court held that the undisposed-of property should be turned over to the person legally entitled to the same, to wit, the plaintiff in that case.

This case does not lend support to plaintiffs' contention, although it appears that it has laid the foundation for a very plausible argument in their favor. We think there is no basis in law for the contention that, because the property is large, and the income may be more than is necessary to support Joseph and William, this court should terminate the trust practically, and invest these plaintiffs with the property which cannot, under the terms of the will, go to them until after the death of both Joseph and William.

Are the plaintiffs, as a matter of law, entitled to maintain partition under the facts of this case?

Under the terms of the will, the testator gave, devised, and bequeathed all his property, both real and personal, in trust, to be held and managed by M. H. Brinton, trustee, for the maintenance of William and Joseph. This created a life estate in the property in favor of Joseph and William. That estate could only terminate upon their death. No specific devise was made of the property to these heirs. They never became entitled to it or to its possession. They could make no conveyance that would invest their grantee with title to the property, as against a conveyance made by the trustee upon the death of William and Joseph. *Hunter*

3. PARTITION: actions for partition: right to possession as affecting right.

*v. Citizens Sav. & T. Co.,* 157 Iowa 168.   The result is the same, whether we apply the doctrine of equitable conversion or hold that the beneficiaries under the will took an equitable interest in the thing devised.

It is evident from this will that it was the purpose and intent of the testator to create a life estate in Joseph and William, to be held and managed by a trustee; that, upon the death of these beneficiaries of the life estate, the trustee should sell the property and divide the proceeds among the heirs of the testator.   Assume the most favorable attitude for these plaintiffs in this case, and say that they became vested with either a legal or equitable interest in the estate, subject only to the life estate, it follows that the rights they acquired must be in subordination to the life estate created.   They became, at best, remaindermen, and their right to maintain this suit must be measured and determined by that relationship.   It is a general proposition that they only can maintain partition who are entitled to immediate possession by virtue of some ownership in some part of the property sought to be partitioned.   It was so held in *Henderson v. Henderson,* 136 Iowa 564, in which it was said:

"As a general rule, no one but a party entitled to the present possession of his share in severalty may maintain an action for partition."

As bearing upon this question, see *Elberts v. Elberts,* 159 Iowa 332; *Smith v. Runnels,* 97 Iowa 55; *Clark v. Richardson,* 32 Iowa 399; *Brown v. Brown,* 67 W. Va. 251 (67 S. E. 596, 28 L. R. A. [N. S.] 125, and authorities cited).

Under no theory of this case were these plaintiffs ever entitled to the possession of this property.   No specific devise of the property was ever made to them.   The only right acquired by them under the will is the right to share in the proceeds of the property on sale made by the trustee.   Under the provisions of the will, no sale could be made until after the death of Joseph and William.   No right to the

possession or to the proceeds came to these plaintiffs until
the happening of that event.   Even if we should assume
that the plaintiffs became vested with either a legal or equi-
table title in the land, subject to the life estate, they are
not entitled to maintain this action at this time.   See au-
thorities cited above.

We think, however, that the effect of this will was to
work an equitable conversion of this property.   In *Beaver*
*r. Ross*, 140 Iowa 154, 158, it was held that, where there is
a postponement of the sale to a time subse-

**4. CONVERSION:**
**equitable con-** quent to testator's death, the devisee takes
**version: wills.** a vested interest, subject to the life estate
and the executor's power of sale, and a conversion takes
place at the instant of the testator's death, and all prop-
erty rights are then determined as if the conversion had
taken place at that time, and the rights of the parties are
the same as if the property were personalty.   In other
words, the interest passes as personalty, and the legatees
have no estate in the land as such.   But even if there were
no conversion, and an estate vested subject to the life estate
and the power of the trustee to sell, no right to possession
came to them, and no sale could be made by them which
could not be defeated by a sale under the power vested in
the trustee.   It follows, then, that, under either theory,
these plaintiffs became invested with no title in or to the
lands sought to be partitioned that can be the subject of
partition.   This, whether we treat the provision of the will
as working a conversion, or whether we treat it as passing
some equitable or legal interest in the thing devised.   There
exists in them no right to the property or to its possession
until the time arrives for distribution under the terms of
the will.   Whatever rights these plaintiffs have in the prop-
erty must be measured by the provisions of the will.   The
testator gave, devised, and bequeathed the lands to his trus-
tee, to be held and managed for the benefit of Joseph and

William during their lives. By no words did he invest these plaintiffs with title, immediate or otherwise, in the property then owned by him. There was a definite and distinct disposition of the property during the lives of Joseph and William, to be held and managed for their support and maintenance. Only upon the happening of a contingency—the death of both Joseph and William—was any power vested in the trustee to sell the property, and only upon the exercise of that power, after the death of William and Joseph, did these plaintiffs become entitled to receive anything out of the estate of the testator. They have, and had then, therefore, no vested right to the possession and enjoyment of the property through any provision of the will, until the happening of the contingency upon which such right alone could accrue. Until the termination of the trust by the death of these two beneficiaries, the will gives to these plaintiffs no right to even the proceeds of the property. A partition could not be had, in any event, until the expiration of the life estate, or a failure of the trust provisions of the will. While the *cestui que trusts* are alive, and the trustee in full and active possession of the trust property, no right to the possession or enjoyment of even the proceeds of the estate came to these plaintiffs under this will.

It is claimed, however, that the provisions of the will create only a lien upon the property covered by the will in favor of Joseph and William for their support and maintenance during their lives; that this creates

5. PARTITION: proceedings and relief: incumbrances. only a right in them to enjoy sufficient of the estate as will meet satisfactorily the requirements of the trust. This claim is based on Section 4249 of the Code of 1897, which reads:

"If any question arises as to the  *  *  *  amount of an incumbrance,  *  *  *  the court may direct an issue to be made up between the incumbrancer and an owner, and an adjudication thereon shall be decisive of their respective rights; and, upon a sale, it may order the money to be re-

tained or invested to await final action in relation to its disposition."

There might be something in this contention if the will simply created a lien in favor of these parties for support and maintenance, and the amount was in dispute, and the title had rested in these plaintiffs under the terms of the will; but such is not the situation here, and we need not further consider this statute.

It is next contended that the power vested in Brinton, the trustee named in the will, terminated with his death, and that the trust expired with his death. The assumption seems to be that, the trust having expired, the estate created in Joseph and William expired also; that the whole estate passed directly to the heirs, independent of any provision of the will; that no power passed to Peterson, under his appointment as trustee, to make a sale of the property, and no power to carry out any provision of the will. This is only argumentative, however, from what is said by this court in *Feaster v. Fagan,* 135 Iowa 633, 635; but we find nothing in that case to support this contention.

6. TRUSTS: management of trust: death of trustee: effect.

It was the purpose and intent of the testator to create a trust. The will itself defined and limited the trust. It named Brinton as the one designated by him to carry out the trust. There is nothing in the will to indicate that special trust or confidence was imposed by the testator in Brinton. The duties of the trustee were fully defined. On Brinton's death, the trust remained. The power lay in the court to preserve the trust; to see that the purposes of the testator were carried out. To this end, Peterson was appointed to execute the trust, in accordance with the terms of the will. No discretionary power vested in Brinton. No discretionary power passed to Peterson. On Peterson's appointment, his duties were defined and limited by the will itself; and we think, therefore, he became vested with all

the power of a trustee in the management of the trust estate, limited and defined by the will itself that created the trust. As bearing upon this question, see *Feaster v. Fagan,* 135 Iowa 633, in which it was held that, where the power to sell was not left discretionary,—was not in the nature of a personal trust,—but its exercise was absolutely essential to the carrying out of the provisions of the will,—that power passed to one substituted in place of the one named in the will as trustee or executor. *Boland v. Tiernay,* 118 Iowa 59; *Sherlock v. Thompson,* 167 Iowa 1.

There is nothing in *Hosely v. Shillinglaw,* 176 Iowa 106, that contravenes anything that we have said in this case.

On the whole record, we are satisfied with the action of the court in denying partition in this case, and its action is, therefore,—*Affirmed.*

PRESTON, C. J., WEAVER and STEVENS, JJ., concur.