BEULAH B. TRAVERSY et al., Appellants, v. DAVID BENTLY BELL et al., Appellees.

**PARTITION**: **Right of Action—Cotenancy Necessary.** Partition may
1   be maintained only when the parties plaintiffs and defendants are entitled to the present possession of their interests in severalty. So held where life tenants sought a sale against remaindermen.

**LIFE ESTATES**: **Sale by Court.** A court of equity will not, on the
2   application of a life tenant of real estate, order a sale of the property and the investment of the proceeds and the payment of the income thereof to such life tenant, except in those rare instances when such action is necessary to *preserve* the property.

*Appeal from Muscatine District Court.*—A. P. BARKER, Judge.

MAY 15, 1923.

SUIT for partition of real estate by sale and investing the proceeds, praying that the income thereof go to the life tenants and the principal be reserved for the remaindermen. Petition was dismissed on its merits. Facts appear in the opinion.— *Affirmed.*

*G. Albee* and *J. F. Devitt,* for appellants.

*Jayne & Westrate,* for appellees.

ARTHUR, J.—I.   David A. Bently owned a tract of land in Muscatine County, Iowa. He died in 1887, testate. His will was admitted to probate. By his will David A. Bently gave to his wife a life estate in his landed estate. His widow elected not to take under the will, and her dower interest was admeas-

ured. After the widow's distributive share was carved out, there remained the 430 acres of land involved in this action. The provision of the will devising the interests in the land involved in this case is as follows:

"After the death of my said wife it is my will that the real estate herein devised to her, for life, shall go to and be enjoyed by my two adopted children, Greely and Beulah, to be held by them for and during their natural lives, it being my intention to give to them only a life estate in said real estate. Should either of them die before the other without issue born of his or her body, and living at the time of his or her death, then it is my will that the estate herein devised to them jointly shall go to and be possessed by the survivor of them, for his or her natural life only. At the death of my said two adopted children, it is my will that the property herein devised to them for life shall go to their children and descendants in case they have any such children and descendants, taking by representation and not per capita."

When this suit was begun, Beulah B. Traversy and Greely W. Bently, who are the adopted children of David A. Bently, were the owners jointly of a life estate in the 430 acres of land here involved. The fee remainder in the land was in the children of Beulah B. Traversy and Greely W. Bently. Beulah B. Traversy had two children living: David Bently Bell and Genevieve Herrick Laria, both adults. Greely W. Bently had five children living: Hazel B. Trautman, Oliver E. Bently, Dorothy C. Bently, Orville L. Bently, and Emery W. Bently. Beulah B. Traversy and Greely W. Bently, owners of the life estate, instituted this action, making their children, the remaindermen, defendants, and prayed that the land be sold and the proceeds of such sale be invested in good securities, and that they receive the income therefrom during the period of life tenancy, and that the principal be reserved for the remaindermen then living and other remaindermen that might be born, and the principal be distributed among the remaindermen after the death of the life tenants. After the commencement of the suit, Emery W. Bently died in minority, without having married and without issue, and an amendment was made to the petition, alleging those facts. Also, after the commencement of the suit,

Greely W. Bently conveyed, his wife joining in the conveyance, one half of his interest as life tenant in the land to his daughter, Hazel B. Trautman, who adopted the petition and joined in the prayer thereof. As ground for the sale of the property and disposition of the proceeds as prayed, plaintiffs allege that the land is subject to waste; that the rental thereof in its present condition amounts to approximately two per cent on the investment value of the property, after payment of taxes, upkeep, and overhead; that the best interests of all parties having interests in the property, including plaintiffs and their children, will be served by selling the property and investing the proceeds of such sale in good securities, the income from the proceeds of sale of the land to be received by the owners of the life estate during the term of their tenancy, and by their children, now living or hereafter born, according to their various shares or interests, after the death of the plaintiffs, owners of the life estate.

Defendants David Bently Bell and Genevieve Herrick Laria joined issue, averring that the plaintiffs and they themselves were not tenants in common of said real estate, and denying that plaintiffs are entitled to demand partition of said real estate, or to maintain an action for partition or sale thereof as against them, or to have the property sold and the proceeds invested for the benefit of the owners of interests therein. Defendants further aver that the only interest in said real estate of Hazel B. Trautman, who was joined as a plaintiff in the action, and who adopted the petition of the original plaintiffs, is a future interest therein, as one of the children of plaintiff Greely W. Bently, and that she is not entitled to the present possession in severalty of said real estate, and not entitled to demand partition or sale and investment of the proceeds.

Under the issues made by the pleadings, two questions were presented to the court for determination, which questions are presented on this appeal: (1) Whether, in view of the respective interests of the parties, plaintiffs and defendants, in said real estate, the plaintiffs are entitled to maintain an action for partition; and (2) whether, notwithstanding the relationship of the parties and their interests in the land, a court of equity will authorize sale of the property because the property in its

present condition is not producing a larger income. The lower court denied relief in both forms prayed by plaintiffs, and dismissed the petition on its merits, from which holdings and judgment this appeal is taken.

II. The court was right in denying the prayer for partition of the real estate. Partition can be enforced only when the several owners of interests in the property are tenants in common of the property sought to be partitioned.

1. PARTITION: right of action: cotenancy necessary.

*Clark v. Richardson,* 32 Iowa 399; *Johnson v. Moser,* 72 Iowa 523; *Smith v. Runnels,* 97 Iowa 55; *Henderson v. Henderson,* 136 Iowa 564; *Shillinglaw v. Peterson,* 184 Iowa 276. In *Johnson v. Moser,* supra, we said:

"This [the statute] clearly implies that different persons own undivided interests in the real estate sought to be partitioned. That is, they are joint owners or tenants in common of the same real estate; and, in our opinion, the statute clearly contemplates that partition can be obtained only when real estate is so owned."

In *Shillinglaw v. Peterson,* supra, we said:

"It is a general proposition that they only can maintain partition who are entitled to immediate possession by virtue of some ownership in some part of the property sought to be partitioned."

In *Henderson v. Henderson,* supra, we said:

"As a general rule, no one but a party entitled to the present possession of his share in severalty may maintain an action for partition."

In *Smith v. Runnels,* supra, we said:

"Plaintiff having but a life estate in the land, the next question presented is, What authority has a court of equity to order its sale? It is evident that these parties are not joint owners or tenants in common of the same real estate, and it is equally clear that, under our statute, partition can be had only when the land is so owned."

Beulah B. Traversy and Greely W. Bently and their children are not cotenants. Appellants are the owners of a life estate in the property, and are in possession of the property, and are entitled to the possession of the property, and their children, appellees, will not be entitled to the possession of the property

until the expiration of the life estate therein of their parents. It is manifest that the essential elements of cotenancy among the parties is lacking, and, under the common law and under our holdings, the life-estate tenants are not entitled to enforce partition of the real estate by any proceeding.

After the commencement of this action, by an amendment to the petition it was alleged and admitted in the answer to be true that Greely W. Bently conveyed to his daughter, Hazel B. Trautman, one of the remaindermen, an undivided one half of his life estate in the land, and said Hazel B. Trautman became a plaintiff in the action, and adopted the allegations of the petition and the prayer thereof. By this method, appellants evidently sought to strengthen their case, by making Hazel B. Trautman, who had become an owner of an undivided one-fourth interest in the life estate of the property, and who was also a remainderman, a plaintiff. We think that this did not change or in any way enlarge the rights of plaintiffs to maintain the partition action. The deed from Bently to Trautman conveys no right of possession to the other remaindermen, and, so far as they are concerned, they are precisely in the same situation that they were before the deed was executed. It follows, therefore, that, since the persons between whom partition is sought must be entitled to the present possession of their interests in severalty, the court did not err in dismissing the petition of plaintiffs.

III. We come now to a consideration of the proposition most insisted upon by appellants, as we understand them: that a sale of the property should have been ordered and the proceeds invested, and the income therefrom paid to the life tenants during their tenancy, and the principal, after the expiration of the life estate, to the remaindermen, on the ground that the present income from the property is small, and that the property is subject to waste.

2. LIFE ESTATES: sale by court.

The oral testimony offered by appellants was mostly directed to such claimed relief. The testimony is to the effect that the rental income of the land is $2,200 per year, and that, after paying the taxes and expenses of upkeep, in the way of wire for fencing and incidental repairs, the net income from

the land to each of the two life tenants is approximately $800 per year; that the 114-acre tract is worth approximately $250 per acre, and the 312-acre tract, approximately $225 per acre; that, if the land were sold and the proceeds invested, the income would be from $2,200 to $2,400 per year for each life tenant. The testimony also shows that some improvement in the way of tiling would be beneficial to the property; that the buildings and fences on the property are in a badly run-down condition, and are in need of extensive repairs and perhaps some new building. The life tenants claimed that it would take $9,000 or $10,000 to place the property in good condition, by doing necessary tiling, fencing, and building on the premises. It is claimed by the life tenants, appellants, that the property cannot be rented to a suitable tenant in the condition that now exists.

Appellants urge that the court had authority, and should have made an order for the sale of the property and the investment of the proceeds for the benefit of those interested, under Code Section 4271. Such position is untenable. The statute provides:

"If a tenant for life or years is entitled as such to a part of the proceeds of sale, and the parties cannot agree upon a sum in gross which they will consider an equivalent for such estate, the court shall direct the avails of the incumbered property to be invested, and the proceeds to be paid to the incumbrancer during the term of the incumbrance."

In *Clark v. Richardson,* supra, the question was whether the dower of the widow, which was a life estate in certain property which was assigned to her, was subject to partition, and whether the proceeds of the land admeasured to her should be sold and the proceeds invested for her benefit. The lower court held that such dower interest was the subject of partition. We said:

"The section [now 4271] clearly has reference to property which may be partitioned, and provides the mode of adjustment of an incumbrance by way of estate for life or years existing thereon. Now, if it be found that dower, when assigned, is not properly the subject of partition, it must be apparent that Section 3630 [now Section 4271] can have no reference or application to it. The object of the action of partition is to effect a

division of real property among several joint owners, so that each may hold his respective share in severalty. * * * It is to be observed in this case that the widow's dower had been assigned before the institution of the partition proceedings. Whatever was the nature of the widow's tenancy before admeasurement of dower, from that time she did not hold any part of the premises as joint tenant or tenant in common with the other heirs.''

It will be seen that the section will not bear the construction placed upon it by appellants.

IV. Appellants strenuously insist that, under the evidence produced, the court had jurisdiction and inherent power to order the sale of the real estate and the investment of the proceeds, the income therefrom to go to the life tenants, and the principal to be reserved for the remaindermen. It may be conceded that, under certain circumstances, a court of equity has inherent authority to order the sale of real estate which has been devised by the will of a testator to a life tenant, with remainder over, but the authority so to do is strictly confined within narrow limits. The great weight of authorities is to the effect that such power will not be exercised unless it clearly appears that, unless the property is sold and the proceeds invested, it will be entirely lost to those entitled thereto. In other words, the court's power in this respect will be invoked only as a matter of extreme necessity, and only in such cases, because, if exercised under any other circumstances, it would be an unwarranted interference with the express intent of the testator. *Gavin v. Curtin*, 171 Ill. 640 (40 L. R. A. 776); *Ruggles v. Tyson*, 104 Wis. 500 (48 L. R. A. 809); *Thompson v. Adams*, 205 Ill. 552 (69 N. E. 1); *Miller v. Harding*, 167 N. C. 53 (83 S. E. 25); *Coquillard v. Coquillard*, 62 Ind. App. 489 (113 N. E. 481). In *Gavin v. Curtin*, supra, the Illinois court well expressed the rule in most jurisdictions, in saying:

''We think it well settled that a court of equity, if it has jurisdiction in a given cause, cannot be deemed lacking in power to order the sale of real estate which is the subject of a trust on the ground alone that the limitations of the instrument creating the trust expressly deny the power of alienation. It is true, the exercise of that power can only be justified by some exigency

which makes the action of the court, in a sense, indispensable to the preservation of the interests of the parties in the subject-matter of the trust, or possibly in case of some other necessity of the most urgent character.''

In *Ruggles v. Tyson,* supra, the Wisconsin court ordered a sale of certain real estate upon the application of a life tenant, from which the income was not sufficient to pay taxes, liens, and other charges against it, and the same would have to be lost to the parties interested therein, unless sold. In discussing the power of a court of equity to authorize such a sale, the court said:

"In *Hale v. Hale,* 146 Ill. 227 [20 L. R. A. 247, 33 N. E. 858], the court decided, in effect, that, for the purpose of preserving the estate for those ultimately entitled thereto, the court could authorize the conversion of property of one kind into that of another, and the holding of the latter as the equivalent of the former. In *Gavin v. Curtin,* 171 Ill. 640 [40 L. R. A. 776, 49 N. E. 523], * * * a case quite similar to the one before us, the court directed a sale of the property for the purpose of preserving the estate of the life tenant, and that of the remaindermen as well, from being divested by tax liens and a mortgage to which both estates were subject, it appearing that the income from the property was not sufficient to keep down the interest and taxes, and that the improvements were likely to go to waste for want of necessary repairs. The power of equity to furnish an adequate remedy to meet the necessities of the situation was held to be beyond reasonable controversy, but that the remedy in such case should be adapted to the preservation of the property and be limited to that. In such an emergency the court is required to stand in the place of the creator of the estates, and do what he would have authorized, had he anticipated the exigencies rendering some change in his scheme necessary in order to prevent the loss of the subject of it. Probably no case can be found that goes further than those referred to. The rule they recognize being one of necessity, its scope is obviously limited by the purpose which calls for its application, that of preserving the subject and title of the estate.''

Appellants cite *Reed v. Alabama & G. Iron Co.,* 107 Fed. 586, and *Kuhn v. Kuhn* (Ky.), 68 S. W. 16, in support of their

position. In the *Reed* case, where it appeared that the remainder estate was in a number of minor children of the life tenants, and that there was need of funds for the maintenance and education of the children remaindermen, it was held that the court had authority to "render a decree for the sale of the unproductive property, and reinvestment of the proceeds so as to produce an income for the children." In this case there were complications arising from the prior orders of the state court. Vested rights in the property involved had accrued to purchasers, under a sale authorized by order of the state court, and the purchasers had paid the purchase price and improved the lands; and it is likely that the court was influenced somewhat to hold as he did in order to protect their rights in the premises. The opinion was by a district judge, and not by the Circuit Court of Appeals.

The *Kuhn* case, supra, seems to have been based upon statute. See *Bethshares v. Allison*, 141 Ky. 643 (133 S. W. 555).

The rule seems to be that it is the duty of the court, in dealing with the questions here involved, not to violate the will and intention of the testator in his devise to the beneficiaries; and any departure therefrom can only be justified by some exigency which makes the action of the court imperative for the preservation of the estate. As said in the *Ruggles* case, supra:

"The rule they recognize being one of necessity, its scope is obviously limited by the purpose which calls for its application, that of preserving the subject and title of the estate."

The life tenants of the property involved have been in possession of the land since 1888. They have not kept the buildings and fences in repair. The life tenants have enjoyed the income from the property without spending much in the maintenance of the property; and now, when the property needs repair, they seek to evade placing the property in a fair condition for rental, by having it sold. The land is not in any danger of being lost unless it is sold. The reason for asking to have it sold is that the income may be increased. Appellants claim that the net income from the property is only 2 per cent on its value. Many owners of farm lands at the present time are complaining that the income therefrom is small, but that is not likely to be a permanent condition. We think that the record does not present

a situation or any exigency that would warrant the court in ordering sale of the property and investment of the proceeds, as prayed by appellants. We think that the court did not err in refusing the order prayed.

V. Oliver E. Bently, Dorothy C. Bently, and Orville R. Bently, children of plaintiff Greely W. Bently, were made defendants in the action, but did not answer; and default was entered against them. Also, numerous other persons and unknown claimants were made parties defendant, and service of the original notice was made upon them for the purpose of curing apparent defects in the title to the property, and decree quieting title was prayed against them. Appellants complain that the court dismissed the entire petition, and did not grant the relief in the way of quieting title. Quieting title was incidental to sale of the property, and sale being denied, it was not error to refuse such part of the prayer of petition. While the remaindermen who were made defendants and defaulted of course did not resist the prayer of the petition to quiet title against them, the court rightfully held that it had no jurisdiction to grant the prayer of the petition as to sale of the property and reinvestment of the proceeds, and it was not error to dismiss the petition entirely.

The judgment of the lower court is—*Affirmed*.

PRESTON, C. J., EVANS and FAVILLE, JJ., concur.