**Ermabeth LONG, Appellant,**

v.

**Kenneth CRUM et al., Appellees.**

**No. 60513.**

Supreme Court of Iowa.

June 28, 1978.

Swanson, Boeye & Bloom, Red Oak, for appellant.

John K. Petersen, Red Oak, for Kenneth Crum.

Jonathan B. Richards, Red Oak, guardian ad litem and attorney for unknown heirs and claimants.

Considered by MOORE, C. J., and RAWLINGS, LeGRAND, REES and HARRIS, JJ.

LeGRAND, Justice.

This appeal comes to us on an agreed statement of facts. It involves a suit to sell real estate held by plaintiff as life tenant under the will of her husband, Vernon P. Long. Her petition was dismissed and she appeals. We reverse and remand for further proceedings as directed herein.

The undisputed facts are as follows. Vernon P. Long died November 28, 1957. His assets included two parcels of real estate, one situated in Montgomery County and one in Adams County. Although in different counties, the two parcels are contiguous and consist of approximately 342 acres.

At the time of her husband's death, plaintiff was forty-one years old. She is now sixty years of age and remains unmarried. Her two children, Margaret Kathryn and Bernard Wayne, ten and six respectively when their father died, are now twenty-nine and twenty-five years of age. Both are unmarried and childless. Because of severe physical disability, it is unlikely Margaret will ever have children. Whether Bernard will is, of course, not presently determinable.

The income from the property has been insufficient to maintain and improve the farm. The land is hilly and rough. The soil is thin and subject to considerable erosion, and the buildings and fences are in bad condition. The testimony of two real estate experts fixed the value of the property at approximately $375.00 per acre.

The last will and testament of the decedent contained this provision:

"All the rest residue and remainder of my estate of which I may die seized or to which I may be entitled, I will devise and bequeath to my beloved wife, Ermabeth Long, for her use and benefit during her life time, she to have, collect and use the rents and profits thereof.

"Upon the death of my said wife, I will devise and bequeath a life estate only in all the rest, residue and remainder of my estate of which I may die seized or to which I may be entitled, to my beloved children, Margaret Kathryn Long and Bernard Wayne Long, or to the survivor of them, as tenants in common, with remainder over in fee per stirpes to the heirs of their bodies."

Under the will successive life estates are created, first for the testator's widow, then for his children. Whether the remainder will vest under the will depends on whether either Kathryn or Bernard has a child.

Ermabeth's life estate has already lasted 21 years. The life expectancy of the children makes it probable that theirs will continue for an additional substantial period after Ermabeth's death. They join their mother in asking that the real estate be sold.

Plaintiff's petition asks a sale of the real estate, the appointment of a trustee to administer the proceeds on behalf of the life tenants, and preservation of the corpus for the benefit of those who ultimately become entitled to it.

Defendants include Kenneth Crum, a tenant; the two children, Margaret and Bernard; and "all unknown heirs of the body of Margaret Kathryn Long and Bernard Wayne Long and all other unknown potential claimants who may eventually acquire a vested interest in remainder by virtue of being heirs of Vernon P. Long, deceased." A guardian ad litem was appointed to represent all unknown heirs and claimants.

I. The problem inherent in the foregoing facts arises because the remainder has not vested and, indeed, it is uncertain if it will ever do so. In the meantime an admittedly unproductive farm is held captive for probably more than half a century after decedent's death.

In an effort to resolve this problem, plaintiff seeks authority to sell the land under the following provisions of § 557.9, The Code:

"No expectant estate shall be defeated or barred by an alienation or other act of the owner of the precedent estate, nor by

the destruction of such precedent estate by disseizin, forfeiture, surrender, or merger; provided that on the petition of the life tenant, with the consent of the holder of the reversion, the district court may order the sale of the property in such estate and the proceeds shall be subject to the order of court until the right thereto becomes fully vested. The proceedings shall be as in an action for partition."

The trial court rejected the plaintiff's petition, holding such a sale was prohibited by *Traversy v. Bell,* 195 Iowa 1243, 1249, 193 N.W. 439, 442 (1923). While we agree *Traversy v. Bell* would require this result, we do not agree that it is controlling in this case. Our reasons for reaching this conclusion require some discussion of the *Traversy* case and of subsequent legislation, particularly a 1947 amendment to § 557.9.

Factually, *Traversy* is much like the present case. There the life tenants petitioned for a partition of real estate, asking that the income from the proceeds be paid to them and the principal preserved for the remaindermen. There were remaindermen then in existence, but the class was still open. In affirming the trial court's refusal to allow partition, we said:

"It may be conceded that, under certain circumstances, a court of equity has inherent authority to order the sale of real estate which has been devised by the will of a testator to a life tenant, with remainder over, but the authority so to do is strictly confined within narrow limits. The great weight of authorities is to the effect that such power will not be exercised unless it clearly appears that unless the property is sold and the proceeds invested it will be entirely lost to those entitled thereto. In other words, the court's power in this respect will be invoked only as a matter of extreme necessity, * * * because if exercised under any other circumstances, it would be an unwarranted interference with the express intent of the testator." 195 Iowa at 1249, 193 N.W. at 442.

*Traversy* was decided in 1923. Section 557.9 was first enacted in 1924. (Extra Session, 40 G.A., Ch. 183). It was amended in 1947 (Ch. 274, Acts of the 52d G.A.) to add this language:

"[P]rovided that on the petition of the life tenant, with the consent of the holder of the reversion, the district court may order the sale of the property in such estate and the proceeds shall be subject to the order of court until the right thereto becomes fully vested. The proceedings shall be as in an action for partition."

We agree with plaintiff that § 557.9 vested the trial court here with discretionary power to order a sale.

At the time *Traversy* was decided, the equitable action of partition was limited to those owning real estate jointly or as tenants in common. A life tenant could not demand partition against a remainderman because *all* parties were required to have a present right of possession in the land. This was the rationale of the *Traversy* decision. *See also Anderson v. Anderson,* 227 Iowa 25, 36, 37, 286 N.W. 446, 451–52 (1939); 33 Iowa L.Rev. 692, 693 (1948).

The 1947 amendment to § 557.9 worked a significant change in this rule. One of its purposes was to authorize a judicial sale when it would have been virtually impossible to do so otherwise because of the holding in *Traversy.*

Important in our consideration is this statement of legislative purpose at the time the amendment was enacted (H.F. 429, Acts of 52d G.A. (1947)):

"The purpose of this bill is to make it possible for a grantor and a life tenant, in cases where contingent remaindermen cannot be determined, to have property sold under proper proceedings, and the proceeds held intact under the jurisdiction of the court until the remaindermen are determined."

The petition before us was filed by Ermabeth as life tenant. The two children, who are entitled to enjoy their own life tenancy on her death, also requested a sale of the real estate. The will provides for the residue to go to the heirs of the body of Marga-

ret and Bernard. This creates a contingent remainder, both because it depends upon the happening of an uncertain event and because, if the event occurs, the persons who will comprise the class are unknown. *Buchan v. Buchan,* 254 Iowa 566, 569–70, 118 N.W.2d 611, 613–14 (1962).

The ultimate question is whether these circumstances permit a sale of the property under the terms of § 557.9. The trial court held it had no authority to order a sale because the will created no reversionary interest. As the consent of the holder of the reversion is a condition imposed by the statute on the right to sell, the trial court held § 557.9 not applicable. For the reasons hereafter set out we reach a contrary conclusion.

■ A reversion is an interest created by law, not by any act of the party. It is simply the interest remaining in the grantor or in a testator when he conveys or devises an interest less than the entire estate which he owns.

The rule is stated in 1 *American Law of Property* (Casner Ed. 1952) § 4.16, page 432 as follows:

"A reversion is the interest remaining in the grantor, or in the successor in interest of a testator, who transfers a vested estate of a lesser quantum than that of the vested estate which he had * * *"

*See also* 23 Am.Jur.2d *Descent and Distribution* § 70, pages 813–14 (1965); *Norman v. Horton,* 344 Mo. 290, 126 S.W.2d 187, 189 (1939); *Copenhaver v. Pendleton,* 155 Va. 463, 155 S.E. 802, 806 (1930).

■ Another principle becomes important here. Under our law, title to real estate vests immediately upon the death of the testator. Section 633.350, The Code; *Matter of Blivens Estate,* 236 N.W.2d 366, 371 (Iowa 1975); *DeLong v. Scott,* 217 N.W.2d 635, 637 (Iowa 1974).

In the case now before us, the reversionary interest vested instanter upon the death of Vernon P. Long in Ermabeth, Margaret, and Bernard, the surviving spouse and only children of the decedent.

■ It is quite true the holders of the reversion might never enjoy the fee because of the conditions created by Vernon's will. Nevertheless, they held the right of reversion, an actual estate in praesenti although its enjoyment is postponed to some future time. *See* 28 Am.Jur.2d *Estates* § 171, page 298–99 (1967).

■ We refer again to 1 *American Law of Property* § 4.16, page 432 where this appears:

"A reversion is always vested, that is to say, it is ready to take effect in possession however and whenever the prior estate terminates. Although it is vested, it may be a defeasible estate."

The author then gives this example at p. 435:

"A reversion may be created subject to a limitation in contingent remainder. Suppose A, owning land in fee simple, conveys it as follows:

'To B for life, remainder to the children of B.'

"At the time of the conveyance, B has no children. There is then a reversion in the grantor until a child of B is born, at which time the reversion is extinguished. * * * *"

Applying these rules to the facts at hand, we hold Ermabeth, Margaret, and Bernard took a reversionary interest in this real estate immediately upon Vernon's death, defeasible if either Margaret or Bernard has children. The only consent necessary to satisfy § 557.9 is theirs, and the trial court had authority to decree a sale of this real estate.

We do not decide whether there should be a sale, only that the trial court has discretionary authority to order one. We remand the case for determination of this question. If a sale is authorized, suitable provisions should be made, of course, for the protection of both the life tenants and those who will ultimately take the fee.

II. There remains for consideration an issue which counsel admits is moot but which we are urged to decide because of its great

importance to the bar and the public. It concerns the notice of termination of tenancy which plaintiff attempted to serve on Kenneth Crum, a tenant on part of the land in question.

Plaintiff wanted to terminate Crum's lease. She sent him a notice of termination of tenancy by restricted certified mail as provided by § 562.7(3), The Code, 1975. The trial court found Crum refused to accept the notice. It was then returned to plaintiff with the notation "Returned to Sender" because it had been "refused."

The question is whether this constituted compliance with the statute on notice; or to put it differently, may a tenant defeat a landlord's attempt to give him notice of termination by the simple expedient of refusing to accept it. The trial court held the notice did not satisfy the statute.

Although we have not construed this statute, we have considered analogous notice statutes. Perhaps the closest case is *Wolfs v. Challacombe,* 218 N.W.2d 564, 569 (Iowa 1974), which involved a notice to a nonresident under § 321.501, The Code. It, too, was sent by restricted certified mail, and it, too, was refused by the addressee.

We said there:

"[W]here plaintiff is able to establish absence of a return receipt showing actual delivery is attributable to the nonresident's refusal to accept delivery of notification addressed to him when he had opportunity to do so the statute is satisfied since a defendant cannot by his own willful act, or refusal to act, prevent plaintiff from maintaining his action. *Emery Transportation Co. v. Baker,* 254

Iowa [744] at 750–751, 119 N.W.2d [272] at 277. *See* Annot., 95 A.L.R.2d 1023, 1045–1050."

■ The same rule should apply here. Upon proof of a tenant's refusal to accept a notice of termination attempted to be served as § 562.7(3) provides, the statute is satisfied and the notice becomes effective.

We point out, however, the proof must show a *refusal* to accept. *Emery Transportation Co. v. Baker,* 254 Iowa 744, 749–750, 119 N.W.2d 272, 275–76 (1963).

We quote further from *Wolfs:*

"The court held in [*Emery*] that only where it is shown delivery was 'refused' will the service be assumed complete; the fact defendant did not call at the post office to obtain the envelope did not constitute a good and sufficient delivery of the notice to him. The notation on the envelopes that the letters were 'unclaimed' was not evidence of the nonresidents' refusal to accept delivery thereof.

"In light of the foregoing pronouncements in *Emery* it cannot be said plaintiff sustained his burden of proving absence of a return receipt showing actual delivery of notifications of filing with the Commissioner was attributable to defendants' refusal to accept offered delivery of such notification."

Accepting the trial court's finding of fact that Crum refused to accept the notice, we hold the conclusion that the notice did not comply with the statute was error. Because that issue is admittedly moot, no further order concerning it is necessary.

REVERSED AND REMANDED.