Helen I. HUSE et al., Appellants,

v.

Robert A. NOFFKE et al., Appellees.

No. 2–61429.

Supreme Court of Iowa.

Nov. 22, 1978.

Carroll K. Wood, Webster City, for appellants.

Edna S. Rodenborn, Webster City, for appellees.

Considered by REYNOLDSON, C. J., and LeGRAND, McCORMICK, McGIVERIN and LARSON, JJ.

LARSON, Justice.

Plaintiffs here have petitioned for the sale of real estate, devised to Helen Huse for her life with remainder to her heirs, under § 557.9, The Code, and Rules of Civil Procedure 270–298. The trial court denied the petition, and we affirm.

The "joint and mutual" will of Henry A. Noffke and his wife, Mary, was executed in 1948 and was fully administered upon as to both testators. Henry's was the last estate administered, and he is thus referred to herein as the testator.

Relevant sections of the will are as follows:

## II.

(4) We give to our daughter, Helen I. Huse, if she survives both of us, the use, income and control of:  .   .   .   [legal description of land]  .   .   .   for and during her natural life; and upon her death the title to said real estate shall vest in her heirs at law surviving her (including her husband, if he survives her).  .   .   .

\*       \*       \*       \*       \*       \*

(6) Subject to all the foregoing specific provisions we give, devise and bequeath all of the rest of our property, real and personal, including our homestead, if any we have, to our three children named above, vis., Clarence H. Noffke, Robert A. Noffke, and Lenora Miller, share and share alike and in fee simple.

Thus, the will's provisions, insofar as relevant here, provided for: (1) a life estate in Helen (Noffke) Huse, with remainder to her "heirs at law" and her husband, if he survived, and (2) the residue of the testators' estate to pass to three children of the testators, not including the life tenant.

Helen, as life tenant, brought the action for sale of the 70-acre tract, joined by her husband, her daughter and her daughter's husband. Named as defendants were Helen's brothers and sister, certain other named collateral family members, and "unknown heirs and claimants of Henry A. Noffke," (surviving testator under mutual will).

Helen alleged that the land was unproductive in comparison with its ability to produce income if sold and the proceeds reinvested. She alleged the average rental income from the 70 acres was only $1387 per year; that she had an offer to buy it for $210,000, and this would yield more as an investment in the form of an installment contract at eight percent interest.

She contended that § 557.9, The Code, and R.C.P. 277 permitted the sale as requested.

A guardian ad litem was appointed for the unknown heirs and claimants. He filed an answer denying the allegations for lack of information and asked that the court protect their rights and interests.

The named defendants also filed an answer, generally denying the allegations of unproductiveness and denying that the farm should be sold.

Our review here is de novo. Section 557.-9, The Code (partition rules apply); R.C.P. 270 (partition is equitable proceeding); *Baker v. Giffrow*, 257 Iowa 929, 934, 135 N.W.2d 629, 633 (1965).

The evidence establishes the following facts: Helen Huse, the life tenant, was 53 years of age at time of trial, married, with one child and one grandchild. The average net rental income from the land was about $3000 per year. A purchase offer of $3000 per acre, or a total of $210,000 had been received, and the proceeds could be invested at seven to eight percent. The plaintiff was required to work to supplement her income; her husband had been permanently disabled since 1959, but his social security was sufficient for the parties to "get by."

The law of Iowa, prior to the enactment of § 557.9, The Code, was very restrictive as to the alienability of any estate subject to a life tenancy. A partition suit would not be allowed under any circumstances between the life tenant and remaindermen. *Long v. Crum*, 267 N.W.2d 407, 409 (Iowa 1978); *Traversy v. Bell*, 195 Iowa 1243, 1247, 193 N.W. 439, 441 (1923).

*Traversy* involved a devise for life to children with remainder to "their children and descendents." The court denied the partition on the ground that all parties must have the right to present possession to maintain such action, and the holders of an expectant estate did not so qualify.

The strict rule as stated in *Traversy* continued to prohibit sale through partition actions until 1947, when the present form of § 557.9 was enacted. The section now provides:

> No expectant estate shall be defeated or barred by an alienation or other act of the owner of the precedent estate, nor by the destruction of such precedent estate by disseizin, forfeiture, surrender, or merger; *provided that on the petition of the life tenant, with the consent of the holder of the reversion*, the district court may order the sale of the property in such estate and the proceeds shall be subject to the order of court until the right thereto becomes fully vested. The proceedings shall be as in an action for partition. (Emphasis added.)

Since the trial of this matter, this court has decided the case of *Long v. Crum, supra*. While that case reached a different result, based upon its facts, it discussed several legal principles applicable here, and discussed the meaning and application of § 557.9, The Code.

■ The plain wording of the statute, and the expressed statement of legislative purpose, make it clear that a life tenant may, in a proper case, have property sold and the proceeds held intact, even where contingent remaindermen cannot be presently determined. *See Long v. Crum, supra*, at p. 409, where the purpose of this section is discussed.

In the present case, the interests of the remaindermen are contingent upon their surviving Helen, and are also contingent in that the persons comprising the class as of that time are presently unknown. *See Buchan v. Buchan*, 254 Iowa 566, 570, 118 N.W.2d 611, 613 (1962).

■ It should be noted that § 557.9 does not require the consent of any persons holding the remainder interest nor any right of present possession as required by *Traversy*. Neither does it require any showing of waste to the property. It is discretionary with the district court and "may" be ordered, provided it has: (1) a petition for sale by the life tenant; and (2) consent of the holder of the reversion.

This case was brought by the life tenant, obviously satisfying the first requirement. The second, however, creates a problem for this proposed sale.

■ Who holds the reversionary interest here? Appellants contend that the children and surviving spouse of the life tenant as her "heirs" hold this interest, and that by joining in the petition they have effectively consented to the sale. This theory, however, is based upon a misconception of the reversionary estate. The reversion is not an interest conveyed to either the life tenant or remainderman, but is an interest retained by the testator through operation of law. It is that interest remaining in a grantor who has transferred something less than the entire estate owned by him. *Long v. Crum, supra*, at p. 410, citing 1 American Law of Property § 4.16 (A.J. Casner Ed. 1952) p. 432.

Here, the testator did not convey all of the "sticks" in his bundle of ownership. He retained, by operation of law, an interest which would revert to him, or his successors, in the event the life tenant died without heirs and without a surviving spouse. 1 American Law of Property § 4.16 (A.J. Casner Ed.1952) p. 432 states:

> A reversion is always vested, that is to say, it is ready to take effect in possession however and whenever the prior estate

terminates. Although it is vested, it may be a defeasible estate.

Obviously, a living person cannot have "heirs" or a "surviving husband." Until the uncertainty is resolved as to whether the remainder interest will ever vest, there is a possibility that the estate will revert. When Henry Noffke died, he simultaneously conveyed the life estate and remainder interests and retained, by operation of law, a right of reversion. This right of reversion was an interest in real estate which passed to his beneficiaries immediately upon his death, § 633.350, The Code; *Long v. Crum, supra,* at p. 410, defeasible if the life tenant died with heirs or husband surviving.

No specific devise of this interest was found in decedent's will, but it did contain a residuary clause as set out above. The residue of the estate, including the reversionary interest, passed to the brothers and sister of this life tenant.

These reversionary owners did not consent to the sale; in fact they affirmatively opposed it. The proposed sale may not, therefore, be made under § 557.9, The Code.

Appellants rely upon a Massachusetts case, *Spring v. Hollander,* 261 Mass. 373, 158 N.E. 791 (1927), which allowed the sale of property subject to a life estate under a statute appellants contend is similar to § 557.9, The Code. That case is distinguishable from this one, however, because their statute did not require the consent of the holder of the reversionary interest.

Appellants further contend, as an alternative theory, that the court may order this sale under the authority of R.C.P. 277, which provides:

> The court shall make suitable provision as to the proceeds of any share held for life or years or in remainder, which may be done by appointing a trust for the proceeds involved.

The basis for appellants' reliance upon this rule is not clear. Rules 270–298, concerning partition proceedings, in general, provide the mechanics for implementation of § 557.9, if applicable, but provide no independent authority for sale under these circumstances. Section 557.9 limits the applicability of rule 277 by requiring certain conditions precedent, including consent of the holder of the reversion, *Long v. Crum,* 267 N.W.2d 407, 410 (Iowa 1978). We hold, therefore, that the proposed sale is not authorized by rule 277.

Our opinion here should not be viewed as holding that under no circumstance may property be sold during a life estate without consent of the reversioners. A court of equity has the power to order such a sale under very limited circumstances, usually to prevent waste by the life tenant. This would not be a partition sale but a court-ordered sale for reinvestment to protect succeeding interests. *See Traversy v. Bell,* 195 Iowa 1243, 1247, 193 N.W. 439, 442 (1923), which discusses these distinctions. *See also* Note, *Judicial Sales of Expectant Estates in Iowa,* 33 Iowa L.Rev. 692, 694 (1948).

This basis for relief, however, was not pled, nor would the facts justify it, even if we were to grant appellants' prayer for general equitable relief. *Traversy* stated the rule here as follows:

> [U]nder certain circumstances, a court of equity has inherent authority to order the sale of real estate which has been devised by the will of a testator to a life tenant, with remainder over, but the authority so to do is strictly confined within narrow limits. The great weight of authorities is to the effect that such power will not be exercised unless it clearly appears that unless the property is sold and the proceeds invested it will be *entirely lost* to those entitled thereto. (Emphasis added.) 195 Iowa at 1249, 193 N.W. at 442.

There is no evidence in the record that the interests of the remaindermen have even been diminished during the life estate, and certainly no evidence that it will be entirely lost if not sold.

We conclude that appellants are not entitled to relief upon any of the specific theories urged, nor as general equitable relief, and the trial court was therefore correct in dismissing the petition.

AFFIRMED.