Vera LaVerle THIELE, Milo George Whittenbaugh, Martin Gaylen Whittenbaugh, Edith LaZaida Moran, Penny A. McComb, Arthur V. James, William T. Charpier, Jr., Donna Jean Charpier, William Francis Whittenbaugh, Walter Faye Whittenbaugh, Marjorie Evelyn Knox, Rex Krivanek, and Nellie Ruth Clemens Yurkovich, Appellants,

v.

Maude E. WHITTENBAUGH, Robert L. Anthony, Executor of the Estate of William Whittenbaugh, Deceased, and Russell Jennings, Appellees.

No. 63712.

Supreme Court of Iowa.

April 23, 1980.

McGIVERIN, Justice.

This appeal involves questions that arose in an action to partition land between a life tenant, the second wife of a testator, and remaindermen under the testator's will. The trial court ordered the sale of the land and ruled that the partition sale proceeds were to be invested by a court-appointed trustee, with the income to be paid to the life tenant; and if the income was insufficient, the corpus of the trust could be invaded to pay the "expense of sickness" of the life tenant. In addition, the court ruled that the life tenant's medically prescribed nursing home care constituted an "expense of sickness" in light of the testator's will and prior probate orders interpreting the will. We affirm.

Plaintiffs, remaindermen, appeal raising the following issues for our review:

1. Whether the court had jurisdiction to consider certain estate matters in this partition action;

2. Whether the prior probate case rulings interpreting the testator's will, with regard to whether the phrase "any expense of sickness" included nursing home costs, rendered the issue of whether corpus may be invaded for "medically-prescribed nursing home care" res judicata;

3. Whether the will provisions establishing the scope of the life tenant's interest authorized the life tenant to invade corpus of the partition sale proceeds; and

4. Whether the court erred in its disposition of the sale proceeds.

William Whittenbaugh died testate in 1949. His principal asset was a Fayette County farm. In his will he made the following devise:

Item 2. I will, devise and bequeath the use and control of all of my estate, real, personal and mixed, of which I may die seized or to which I may be entitled, to by beloved wife, Maude Eleanor Whittenbaugh, for and during the period of her natural life as long as she remains unmarried and my widow, with the further provision that said life estate is to cover any expense of sickness and funeral

R. L. Donohue and James S. Updegraff, West Union, for appellants.

R. L. Van Veldhuizen and M. S. O'Brien of O'Brien Law Firm, Oelwein, for appellees.

Considered by HARRIS, P. J., and McCORMICK, ALLBEE, McGIVERIN, and LARSON, JJ.

expense for my said wife, Maude Eleanor Whittenbaugh, if she remains unmarried and my widow.

The will further provided in Items 3 and 4 that upon Maude's death or remarriage the remainder of William's estate was to be sold by the estate executor and, subject to payment of her funeral expense, distributed to the remaindermen, plaintiffs herein.

Maude E. Whittenbaugh is the main defendant and appellee in this appeal. Robert L. Anthony is the executor of William's estate, the court-appointed trustee in the partition action, and a nominal defendant herein. Defendant Russell Jennings was a tenant on the farm when the partition action was commenced, but is not active in this appeal.

After William's death, Maude took possession of the farm devised pursuant to "Item 2" of William's will and received the income from it as life tenant. She has not remarried and was age 86 at time of trial in 1979. In recent years Maude's health has failed and the necessity and expense of care for her by others has increased.

On February 2, 1977, in William's estate file, the court construed the above will provisions to allow the invasion of the principal or corpus of the estate for the payment of Maude's "medical expenses." An appeal by the remaindermen from that ruling was dismissed as untimely. *Thiele v. Whittenbaugh*, 267 N.W.2d 412 (Iowa 1978) (decided without formal opinion).

On August 24, 1978, again in the probate file, on application of the remainderman, the court, without presentation of evidence, interpreted "medical expenses" in its February 2, 1977, order to mean "only doctor, hospital, medicine and the like. It does not include nursing home care. However, it does include any doctor or medicine used in the nursing home." No appeal was taken from that ruling.

Meanwhile, in 1977 the plaintiff remaindermen filed a petition in equity for partition, sale of the farm and division of the proceeds according to their respective shares. Attached to the petition was a copy of William's will. In her amended answer, Maude cross-petitioned also seeking partition of the real estate and that the proceeds be retained in trust for her use during her life. On September 20, 1978, the court entered a partial decree in which it granted partition, ordered sale, and approved the referee's sale of the farm for over $200,000. The court also found that Maude E. Whittenbaugh held a life estate with a power to invade the principal of the farm for medical expenses, but reserved jurisdiction to later provide for disposition of the sale proceeds.

All remaining matters in the partition case were heard at an evidentiary trial on May 8, 1979, by Judge Keefe, who was the same judge who had entered the probate orders of February 2, 1977, and August 24, 1978, construing the will. Remaining to be resolved in the partition case were disposition of the sale proceeds and allowance of attorney fees. Also before the court was a motion made by plaintiffs, with an attached copy of the probate order of August 24, 1978, which defined "expense of sickness" under the will. The motion urged that the August 24 order, because of its res judicata effect, precluded the claim by Maude that her "expense of sickness" could include her nursing home care. Maude filed a written resistance contending the issue of payment for the extraordinary care she requires had not previously been before the court, and that the sale proceeds should be kept intact and available to pay the expense of such care rather than divided between the parties as urged by plaintiffs.

At trial the deposition of Dr. John Ahrens, Maude's treating physician, was received in evidence. He testified that in his opinion her care at the Grandview Nursing Home in Oelwein was a medical necessity. She had acute and severe diabetes, a fractured left leg, continuing gangrenous ulcers on her right leg, and a fractured left arm following an episode of dizziness. In addition, she was confined in a wheel chair except for brief standing periods. She needed frequent nursing care for her leg ulcers and almost daily physiotherapy.

As we have said, our review in partition actions brought pursuant to the authority of section 557.9, The Code 1977, is de novo. *Huse v. Noffke,* 271 N.W.2d 682, 683 (Iowa 1978). We now discuss the issues presented in light of that standard.

I. *The jurisdiction problem.* Plaintiffs contend the partition court had no jurisdiction to consider issues concerning which medical expenses of the life tenant the estate must pay and whether the corpus of the estate can be invaded for those expenses. Plaintiffs also say the trial of those issues in the partition action without notice deprived them of due process.

█ We agree with Maude that the deprivation of due process argument was not urged in the trial court and cannot be considered here for the first time. *State v. Jones,* 289 N.W.2d 597 (Iowa 1980); *State v. Holmes,* 276 N.W.2d 823, 828 (Iowa 1979).

█ Neither plaintiffs nor defendants challenge the jurisdiction of the court under section 557.9, The Code 1977,[1] to authorize the sale of the real estate or the distribution of the sale proceeds. We note that section 557.9, on its face, allows for such action by the court on the life tenant's petition, with the consent of the holder of the reversion. *Huse v. Noffke,* 271 N.W.2d at 684. We find that the filing of Maude's cross-petition seeking partition, the absence of a reversionary interest, and the consent of all vested remaindermen to the partition of the land,[2] met the express conditions precedent of section 557.9, thereby enabling the court to proceed pursuant to the dictates of that statute.

We have held "that the proper institution of an action in partition confers upon the court full jurisdiction over the property and over the full interest and title of every party properly before it." *Schaal v. Schaal,* 203 Iowa 667, 671, 213 N.W. 207, 209 (1927); *Albright v. Moeckly,* 196 Iowa 366, 368, 193 N.W. 625, 626 (1923).

The Iowa Rules of Civil Procedure and statutes relating to partition clearly contemplate the adjudication of the title interests of the several claimants to the land sought to be partitioned. Iowa R.Civ.P. 275 provides in pertinent part:

Except as permitted by this rule there shall be no joinder of any other cause of action and no counterclaim. But any party may perfect or quiet title to the property, or have an adjudication of the rights of any or all parties as to any or all matters growing out of or connected with it, including liens between them.

Iowa R.Civ.P. 271 provides in relevant part: "The petition shall describe the property and plaintiff's interest therein." Section 651.2 also provides:

The answers of the defendants must state, among other things, the amount and nature of their respective interests. They may deny the interest of any of the plaintiffs, and by supplemental pleading, if necessary, may deny the interest of any of the other defendants.

"These statutes contemplate joining issues with respect to the interest in or title to any portion of the estate by the adverse claimants thereto . . . and the establishment of title to the several shares of the estate previous to the partition thereof." *Granger v. Granger,* 172 Iowa 159, 162, 152 N.W. 503, 503 (1915), *aff'd on rehearing,* 172 Iowa 159, 154 N.W. 305 (1915) (decided pursuant to statutes preceding those presently in effect).

1. Section 557.9, The Code, provides:
   No expectant estate shall be defeated or barred by an alienation or other act of the owner of the precedent estate, nor by the destruction of such precedent estate by disseizin, forfeiture, surrender, or merger; provided that on the petition of the life tenant, with consent of the holder of the reversion, the district court may order the sale of the property in such estate and the proceeds shall be subject to the order of court until the

right thereto becomes fully vested. The proceedings shall be as in an action for partition.

2. For discussions of the meaning of "reversion" see *Huse v. Noffke,* 271 N.W.2d 682 (Iowa 1978) and *Long v. Crum,* 267 N.W.2d 407 (Iowa 1978). "It should be noted that § 557.9 does not require the consent of any persons holding the remainder interest nor any right of present possession as required by *Traversy v. Bell,* 195 Iowa 1243, 193 N.W. 439 (1923)." *Huse,* 271 N.W.2d at 684.

A reading of the record in the present case reveals that plaintiff remaindermen alleged their respective interests in their petition. In addition, it is clear that Maude alleged in her cross-petition her interest in the property. She stated therein that her interest was in accordance with the prior probate decree of February 2, 1977. Plaintiffs in their answer to cross-petition denied Maude's allegation of her interest, thereby establishing the extent of Maude's interest as an issue properly before the court in this partition action.

Plaintiffs' lack of jurisdiction contention is also rebutted by the requirement that the court make a "suitable provision as to the proceeds of any share held for life years or in remainder . . ." as set forth ·in Iowa R.Civ.P. 277. In order to make a suitable provision for the proceeds in the present case, it was obviously necessary to establish the extent of Maude's controverted interest.

There is no merit to plaintiffs' first assignment.

Having found that the issue of the extent of Maude's interest was properly before the court, we now determine whether that issue had been decided in a prior probate proceeding so that it had a res judicata effect in the present action, and therefore was binding as to the parties herein.

■ II. *The res judicata question.* Plaintiffs contend the August 24, 1978, probate court's order (interpreting its prior probate order of February 2, 1977, so that the "any expense of sickness" provision of William's will did not include nursing home care) makes res judicata the partition court's interpretation of whether the medically prescribed nursing home expenses of the life tenant, Maude, must be paid from the partition sale proceeds (if the income therefrom is insufficient).

Maude asserts that the partition court's ruling did not violate the doctrine of res judicata in that the court has the power to interpret prior judgments.

Plaintiffs' claim was answered by Judge Keefe in this partition action in his May 22, 1979, ruling in the following manner:

1. On February 2, 1977, the Court issued an opinion interpreting the Will of the deceased, William Whittenbaugh, in Cause No. 12262. The Court held that all medical expenses of the widow not covered by Medicare would be first paid from cash-like items and thereafter the executor had the right to mortgage the realty to provide for the widow's medical expenses. This was appealed to the Iowa Supreme Court by the remaindermen. On June 28, 1978, the appeal was dismissed on a procedural ground.

2. On August 24, 1978, in the same cause, the Court issued an Order interpreting "medical expense" to only include doctor, hospital, medicine and the like; that it did not include nursing home care.

3. Prior to the issuance of the above-referred to Orders, conferences were held between the attorneys and the Court, but no testimony was presented, and the matter was handled as a legal proposition. The remaindermen now argue that the Court's Order of August 24, 1978, precludes the widow [from] being able to go into whether or not medically-prescribed nursing home care can fall into the Court's definition of "medical expenses." Issue preclusion or res judicata are not involved, as that specific question was never raised prior to this current hearing, and the Court will make a determination on that matter.

The trial court proceeded to interpret its prior probate orders of February 2, 1977, and August 24, 1978, in light of the testator's will provision granting Maude the power to have corpus invaded for "any expense of sickness," in order to determine whether the court intended to include Maude's medically prescribed nursing home care as a "medical expense."

"A decree is susceptible of interpretation on the same basis as other written instruments. 'The determinative factor is the intention of the court as gathered from all parts of the judgment. Effect must be given to that which is clearly implied as well as to that which is expressed.'"

*Dairyland, Inc. v. Jenison,* 207 N.W.2d 753, 754 (Iowa 1973) (citations omitted). It was therefore necessary for the trial court to determine whether it intended in its February 2, 1977, and August 24, 1978, probate orders to include Maude's medically prescribed nursing home care. The circumstances under which an order is rendered are also relevant to show its meaning. *Id.* at 755.

■ In our previous cases where the same judge entered a prior order or decree which was the subject of interpretation or inforcement in a later proceeding, we have said, " '[c]onstruction of its own decree by the trial court must be given great weight in determining the intent of the trial court. . . .' " *Cooper v. Cooper,* 158 N.W.2d 712, 714 (Iowa 1968) (citations omitted); *Estate of Cooper v. Cooper,* 215 N.W.2d 259, 260 (Iowa 1974); *Peters v. Peters,* 214 N.W.2d 151, 157 (Iowa 1974).

We give the same deference here to the partition court's interpretation of and conclusion relative to the February 2, 1977, and August 24, 1978, probate orders. The court stated in its May 22, 1979, ruling:

4. From the beginning the Court has ruled that Item 2 of decedent's Last Will and Testament clearly indicated decedent's desire that his widow, Maude Eleanor Whittenbaugh, had not only a life estate but use and control of the farm for any expenses of her sickness and funeral. If this had not been his intention he could have merely left a life estate in the farm and not provided additional language. In addition, Item 3 of said Will provides that immediately upon the death of said widow and after payment of the funeral, the property is to be sold, and therefore the testator had no intention of providing the farm property as such to his devisees but only what was left after payment of expenses.

5. The Court still is of the opinion that normal nursing home care would not qualify as sickness under decedent's Will. However, after reading the deposition of Dr. John Ahrens of Oelwein, Iowa, it is clear that the nursing home care in this case is unique enough to be considered an expense of sickness.

We agree with the trial court's determination in this matter.

The trial court relied heavily on the testimony of Dr. Ahrens in making its decision. "Although in equity appeals we are not bound by the findings of trial courts on the credibility of witnesses, we give weight to such findings." *Harper v. Coad,* 191 N.W.2d 682, 688 (Iowa 1971); Iowa R. App.P. 14(f)(7). Dr. Ahrens testified that the care Maude was receiving at the nursing home was a "medical necessity" and that she needed "a hundred per cent care."

It is obvious that Maude's placement at the nursing home was a result of medical necessity and not for purely custodial purposes, and therefore is included in the definition of "any expense of sickness" under the testator's will, as that phrase has been construed by the two probate orders.

We hold that the February 2, 1977, and August 24, 1978, probate orders had no res judicata effect so as to preclude the partition court from determining whether Maude's interest in the real estate to be partitioned included her costs of medically prescribed nursing home care. We also agree with the trial court's ruling requiring that all of her nursing home expenses not paid by Medicare since entering the nursing home in 1976 should have been paid first from her income interest and then from the possible mortgage proceeds from any mortgage of the farm.

We find no merit in plaintiffs' second contention.

III. *Construction of testator's will.* Plaintiffs contend that if we reject their arguments in divisions I and II, then we must determine whether the will was properly construed in the probate order of February 2, 1977.

In light of our determination in divisions I and II and because of our dismissal of the appeal from the February 2, 1977, probate order in *Thiele v. Wittenbaugh,* 267 N.W.2d 412 (Iowa 1978), we do not believe the issue plaintiffs seek to have us review is involved

in this appeal. *See* § 633.36; Iowa R.App.P. 1(a) and 5(a); *Morrow v. Goodell*, 246 Iowa 982, 69 N.W.2d 916 (1955); *see also Iowa Public Service Company v. Sioux City*, 254 Iowa 22, 116 N.W.2d 466 (1962).

There is no merit to plaintiffs' third contention.

■ IV. *Disposition of the partition sale proceeds.* Finally, plaintiff remaindermen seek a present distribution to them of at least a portion of the partition sale proceeds, and contend the trial court erred in its disposition of those proceeds.

The court made the following statement in its May 22, 1979, decree:

the widow herein was entitled to the income from the farm premises as a life tenant. In addition, the decedent's Will as construed by the Court gave her permission to invade the corpus for payment of "sickness and funeral expense." The mere fact the farm has been changed into cash proceeds would not change the life tenant's rights therein. . . . Equity requires that the widow not be placed in any worse position that she was in at the time of decedent's death.

The court ruled, *inter alia,* that the proceeds should be put in trust, that Maude be entitled to the investment proceeds from the trust for her life, and that in the event the investment proceeds are not sufficient to pay her "sickness and funeral expense," the corpus of the trust may be invaded for that purpose. Maude was also made responsible for payment of all taxes on the farm premises as income beneficiary.

As we said in *Huse v. Noffke,* 271 N.W.2d at 685, Iowa Rules of Civil Procedure "270–298, concerning partition proceedings, in general, provide the mechanics for implementation of § 557.9, if applicable, but provide no independent authority for sale . . . ."

We note that Iowa R.Civ.P. 276[3] states that "[a]fter a sale, each party . . . *shall* have the same rights or interests in the proceeds as they had in the property sold, subject to a prior charge for costs." (Emphasis added.) It is clear, therefore, that Maude has the same interest in the sale proceeds as she did in the farm.

We also note that Iowa R.Civ.P. 277 provides: "The court shall make suitable provision as to the proceeds of any share held for life or years or in remainder, which may be done by appointing a trustee for the proceeds involved." We, therefore, determine what is a "suitable provision as to the proceeds" for the life tenant, Maude, and the remaindermen, plaintiffs.

It is clear from rule 277 that the court had authority to use a trustee for the proceeds in making its distribution. It is also apparent that the provision as to the proceeds need only be "suitable" and not necessarily perfect.

Plaintiffs ask us to reject the trial court's provision as to the proceeds as unsuitable and substitute one of the three following distributions: (1) commute Maude's interest using commutation tables, then distribute that lump sum to her and distribute the balance to the remaindermen; (2) distribute part of the money to the remaindermen and put as much of the money in trust as is necessary to provide Maude the amount of income necessary to support her; or (3) appoint a trustee to administer all of the funds, but only pay her from the income the amount necessary for her support.

The general rule, stated at 51 Am.Jur.2d *Life Tenants and Remaindermen* § 92, at 337–38 (1970), is as follows, and tends to favor the trial court's determination:

In partition suits, commutation of life estates has usually been denied where not provided for by statute. The theory of the cases denying commutation upon such sale, in the absence of statute or consent,

---

**3.** Iowa R.Civ.P. 276 provides:

The property or its proceeds shall be subject to the order of the court until the right becomes fully vested. After a sale, each party, including holders of liens from which the property has been freed by the sale, shall have the same rights or interests in the proceeds as they had in the property sold, subject to a prior charge for costs.

is that the court has no power to give the life tenant a gross sum as the estimated value of his life interest in place of an interest for life in a share of the purchase money, because after the sale the rights of the life tenant and remainderman remain unchanged, and that since they have been legal rights which cannot be disturbed when adhering to the land, they can by no judicial authority be disturbed by a conversion of the land into money. [Footnotes omitted.]

We have no statute that would allow or require a division of the sale proceeds between the life tenant and the remaindermen, and plaintiffs cite no authority in support of their plans to divide the proceeds other than rule 277; nor have the parties consented to such a distribution.

We see no need to disturb the court's provision as to the proceeds in that, thereby, the interests held by the life tenant and the remaindermen in the farm have been preserved in the farm sale proceeds. We hold that the trial court made a "suitable provision as to the proceeds" and we hereby affirm that disposition.

AFFIRMED.